(63 South. 591.)

No. 19,652.

HALL v. ALLEN MFG. CO., Limited.

(Dec. 1, 1913.)

*(Syllabus by the Court.)*

1. RELEASE (§ 28*)—VOLUNTARY DISMISSAL—DEBTOR IN SOLIDO—EFFECT.

A voluntary dismissal by the plaintiff as to one whom she had alleged to be a debtor in solido with a second alleged debtor, when there was really no debt due to plaintiff by the former, is not a "remission or conventional discharge," which releases the second alleged debtor in solido. Civ. Code, art. 2203; Vredenburg v. Behan, 33 La. Ann. 627.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 57–62; Dec. Dig. § 28.*]

2. DEATH (§ 76*)—BURDEN OF PROOF—CAUSE OF ACCIDENT.

In the absence of all evidence as to how an accident happened which resulted in the wounding and death of a person, and there is evidence going to show that the deceased declared that he had caused the accident, damages cannot be recovered by his widow and heirs.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 94; Dec. Dig. § 76.*]

*(Additional Syllabus by Editorial Staff.)*

3. RELEASE (§ 28*) — VOLUNTARY DISMISSAL OF ONE DEBTOR—"REMISSION"—"CONVENTIONAL DISCHARGE."

As used in Civ. Code, art. 2203, providing that the remission or conventional discharge in favor of one of the codebtors in solido discharges all the others, unless the creditor has expressly reserved his rights against the latter, the words "remission" and "conventional discharge" are synonymous. A "remission" in the civil law is a release of the debt, and it is conventional when it is expressly granted to the debtor from a creditor having a capacity to alienate.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 57–62; Dec. Dig. § 28.*

For other definitions. see Words and Phrases, vol. 7, p. 6076.]

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Action by Mrs. Bessie Hall against the Allen Manufacturing Company, Limited. From a judgment for defendant, plaintiff appeals. Affirmed.

Lewell C. Butler and Emerson Bentley, both of Shreveport, for appellant. Edward P. Mills, of Shreveport, for appellee.

SOMMERVILLE, J. Plaintiff, on behalf of herself and minor children, sues the defendant company in damages for the death of her husband, alleged to be due to the fault and neglect of the defendant.

There was judgment in favor of the defendant, and the plaintiff appeals.

[1] In her petition, plaintiff made the Vicksburg, Shreveport & Pacific Railway Company a codefendant, and asked for judgment in solido against both defendants. But, after defendants had answered, and before trial, plaintiff moved for the dismissal of the suit as to the railway company. Thereupon the Allen Manufacturing Company filed an exception and plea in bar to the continuance and maintenance of the suit against it, an alleged solidary debtor with the railway company, as plaintiff had not reserved the right of action against it when the motion was made to dismiss the suit against the railway company.

The plea in bar was properly overruled.

[3] Article 2203, C. C., provides:

"The remission or conventional discharge in favor of one of the codebtors in solido discharges all the others, unless the creditor has expressly reserved his rights against the latter."

The above article is placed in the section entitled: "Of the Remission of the Debt," and it appears that the words "remission" and "conventional discharge," found in the article, are used as synonyms. A "remission," in the civil law, "is a release of a debt"; and "it is conventional when it is expressly granted to the debtor by a creditor having a capacity to alienate." Bouvier.

In the cases relied upon by defendant on its brief there were conventional remissions of some of the co-obligors. But in this case there was no convention alleged or proved wherein plaintiff released the railway com-

pany. She simply caused the suit to be dismissed as to it, for the reason, stated by her counsel, that the railway company was not responsible in any way for the death of her husband; it owed her and her children no debt; and she did not release any debt when she asked that the suit against the railway company be dismissed. As it was not a debtor to her, it was not bound in solido with the other defendant to her, as she had erroneously alleged in her petition it was.

"We are aware of no authority that supports the proposition that a mere discontinuance of the suit as to some of the obligors releases all the rest." Vredenburg v. Behan, 33 La. Ann. 627.

The remission of a debt, under article 2199, C. C., must be conventional, or tacit; and it is tacit "when the creditor voluntarily surrenders to his debtor the original title under private signature which establishes the obligation."

Here, the remission is not alleged or shown to be conventional or tacit. There was no error in the ruling.

[2] The deceased was in the employ of the Vicksburg, Shreveport & Pacific Railway Company, as foreman of a switch gang, which was at times engaged in switching cars to and from defendant's place of business, as well as to and from other places. On the day that he was killed he left the switch engine in charge of one of the crew, who took it some distance for the purpose of entering the premises of the defendant company, while he, the deceased, crossed the intervening tracks directly onto the premises of the defendant company, apparently in quest of the foreman of the latter; although the foreman testifies that he had instructed the deceased in the morning of that same day that the services of the switching engine would not be required on that day. But an order had gone in on that day from defendant to the Vicksburg, Shreveport & Pacific Railway to switch certain cars, and the deceased had evidently gone there for that purpose, although it was contrary to his custom to do so; as the evidence shows that it was usual for him to go to defendant's place of business in the early morning of the day following that on which orders were sent in.

The crew of the engine saw the deceased when he left them going in the direction of the yard of the defendant company, and he was not seen again until he was found under some planks measuring 12 inches in width which had fallen from a pile on defendant's yard, and which had so injured him that he died within a few days after the accident.

The record is entirely silent as to how the accident happened.

The theory of plaintiff is that the lumber which fell had been improperly and insecurely piled, and that it had suddenly fallen upon the deceased while he was in the discharge of his duties, and that defendant was therefore at fault and responsible to her in damages; but there is no evidence to support her theory. The stack of lumber which fell on the deceased was a temporary pile built on the ground of the defendant company almost in immediate contact with the cars from which it had been unloaded. The testimony shows that the different sizes of lumber as they were taken from the cars were placed in different piles, and distributed along the track; and that these temporary piles remained in such position for only a few hours, when they were transported to other parts of the yard, and piled regularly and permanently. The surrounding sizes of lumber had been taken away, leaving a stack of one by twelve inch boards, four feet broad, and about five or six feet in height. When the surrounding lumber had been taken away, a prop was placed against the outside tier of boards by an employé of defendant, so as to make it more secure. This prop was misplaced and broken, and a part of it was found on the body of the deceased, immediately after the

lumber had fallen upon him. The workmen of the defendant company who went to the assistance of the deceased at the time of the accident, and testified on the trial of this cause, unite in saying that when they picked the deceased up, and asked him how the accident had happened, that he replied that he had knocked the prop which had supported the outer tier of lumber, and that it had fallen upon him. This is testified to by four of the witnesses for the defendant, who are not contradicted, and who apparently told the truth. The theory of plaintiff is thus destroyed.

If the deceased, through his own act, inadvertent though it may be, was the cause of a pile of lumber falling upon him, his widow and heirs cannot recover from the defendant for injuries and damages suffered by him and them.

The judge, who saw and heard the witnesses on the trial, evidently believed the testimony of defendant's witnesses; and he dismissed plaintiff's suit. There is no reason suggested by the record why this ruling should be disturbed.

Judgment affirmed.