(101 South. 128)

No. 24158.

### FRIDGE v. CARUTHERS.

(March 10, 1924. Rehearing Denied by Whole Court June 6, 1924.)

*(Syllabus by Editorial Staff.)*

1. Guaranty ⬤⟹23—Agreement for receipt of fixed sum held to change contract from one of guaranty to fixed primary obligation.

Agreement by bank purchasing assets of another bank to release guarantors of accounts of first bank upon payment of stipulated sum *held* to change contract from one of guaranty to fixed primary liability, wherein obligors bound themselves unconditionally, jointly, and in solido.

On Application for Rehearing.

2. Release ⬤⟹28(2) — Discharge of one codebtor in solido held to effect discharge of all others.

If conflict exists between Civ. Code, art. 2100, and article 2203, relating to effect of discharge of one codebtor, it is for court to say which of two articles it will follow, and, having chosen, it should consistently adhere to that choice, and, accordingly, *held*, that discharge of one codebtor in solido without expressly reserving rights against other debtors effected discharge of them also.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by Dr. John R. Fridge against Dr. J. A. Caruthers. Judgment of dismissal, and plaintiff appeals. Affirmed.

Cross & Moyse, of Baton Rouge, for appellant.

Charles A. Holcombe and C. C. Bird, both of Baton Rouge, for appellee.

· By Division B, composed of DAWKINS, LAND, and LECHE, JJ.

LECHE, J. On December 6, 1916, the Capital City Bank of Baton Rouge sold out all its assets to the Mercantile Bank of the same city, which assumed, as a consideration for its acquisition, all the liabilities of the Capital City Bank except its liability to its stockholders. Among the assets thus sold to the Mercantile Bank were a lot of bills receivable of doubtful value, listed as Schedule A. annexed to the act of sale, which were estimated to be worth $67,008.13. It was agreed in the sale from the Capital City Bank to the Mercantile Bank, in which act of sale Dr. John R. Fridge, Dr. J. A. Caruthers, Mr. A. Bauer, and Mr. A. A. Wren, officers and directors of the Capital City Bank, intervened and personally appeared, that the latter would jointly and severally guarantee and warrant the Mercantile Bank against any loss in the collection of the foregoing mentioned bills receivable up to the sum of $67,008.13, and the said appearers further guaranteed the purchasing bank against loss for any liability not disclosed by the selling bank.

It was further agreed that the purchasing bank should be the sole judge as to the disposition or retention of any of said bills receivable, with the right and authority to collect, sell, discount, or compromise, or to declare the same worthless and uncollectable. It was further agreed that the purchasing bank would proceed at once in the collection of and realization upon said bills receivable, and within a reasonable time present to the board of directors of the selling bank an itemized statement of the result. If after the lapse of twelve months a sum in excess of said agreed price should be realized, such excess was to be paid to the Capital City Bank; but if, on the contrary, the final disposition of said bills receivable resulted in the collection of less than said agreed price, then such deficit should be made up by Dr. John R. Fridge, Dr. J. A. Caruthers, Mr. A. Bauer, and Mr. A. A. Wren and paid over to the purchasing bank to protect it against loss.

As soon as this sale was concluded and the contract evidencing the same was signed by all the parties, Fridge, Caruthers, Bauer, and Wren occupied the position of joint and solidary sureties on behalf of the Capital City Bank in favor of the Mercantile Bank. Their responsibility was limited to the sum of $67,008.13 for the realization and collection of bills receivable, and it was unlimited as to any loss resulting from liability undisclosed by the selling bank to the purchasing bank.

On the 13th of November, 1917, it having become evident that the Mercantile Bank would be unable to realize upon a large portion of the bills receivable which it had purchased from the Capital City Bank, the following resolution was adopted by its board of directors:

"Whereas Dr. John R. Fridge and A. Bauer have made a proposition that the Mercantile Bank release them from all further liability as guarantors of Schedule A annexed to the contract between this bank and the Capital City Bank of December 6, 1916, and transfer to Dr. John R. Fridge all residuary rights of this bank against Dr. J. A. Caruthers and A. A. Wren as guarantors with said Fridge and Bauer under this contract, for and in consideration of the sum of twenty-seven thousand and five hundred dollars, one-fourth to be paid by said A. Bauer and three-fourths to be paid by Dr. John R. Fridge, under the following terms, to wit: Three installments to be paid respectively on or before one, two and three years after date, to bear interest at the rate of six per cent. per annum from date until paid, payable annually and the payment of said installments to be secured by mortgage or other good collateral, and

"Whereas, in the interest of a full amicable settlement by said guarantors to avoid litigation and effect a compromise of the issues between this bank and said guarantors, in litigation, expense and delay in the adjustment of the rights of this bank against said guarantors. it is desirable and to the best interest of this bank that said proposition should be accepted and the obligation of the parties of said act of guarantee definitely fixed;

"Therefore, be it resolved by the board of directors of said bank that this offer of the

said Dr. Fridge and A. Bauer, be and the same is hereby accepted; and * * *."

It does not appear whether Dr. Fridge's proposition mentioned in detail in the foregoing resolution was made with the full knowledge of all of his cosureties, but the resolution seems to imply that it was. On the other hand, there appears in the minutes of the board of directors of the Capital City Bank a resolution adopted by that board which indicates that Dr. Fridge had not acted with the knowledge of Dr. Caruthers and Wren. That resolution reads as follows:

"Baton Rouge, La., Dec. 4, 1917.
"The board of directors of the Capital City Bank met this day with Messrs. Fridge, Bauer, Caruthers and Wren present. Dr. Fridge reported that pursuant to the request of the last meeting relative to settlement with the Mercantile Bank, regarding Schedule A, that he had effected a settlement with them whereby we were to pay to them the sum of twenty-seven thousand five hundred dollars, divided into three equal payments of one, two and three years, which settlement will release absolutely from all further obligations to the Mercantile bank the guarantors of list A.
"Therefore be it resolved that we indorse this settlement and authorize that the deal be closed. * * *"

If these resolutions adopted respectively by the purchasing bank and the selling bank represent the facts, as we must assume that they do, it is obvious that when Dr. Fridge reported to the board of directors of the Capital City Bank in the presence of Dr. Caruthers and of Wren, he failed to inform that board that he had negotiated the purchase for his own account, of the rights of the Mercantile Bank against Dr. Caruthers and Wren, although ostensibly acting as the mandatory of the latter in his negotiations with that bank. It is further also obvious that the consent of the Mercantile Bank, in agreeing to fix and limit the liability of the sureties in the sum of $27,500, was not dependent upon the payments to be made by Fridge and Bauer, but that such consent was given in order to reach an adjustment satisfactory to

all the sureties and to avoid future litigation. This is judicially admitted to Dr. Fridge, plaintiff in this suit, in the fourth paragraph of his petition, wherein he alleges that—

"After much negotiation it was agreed between said guarantors and the Mercantile Bank that the liability of said guarantors should be fixed at $27,500."

From the foregoing statement of facts, it follows that when the board of directors of the Capital City Bank accepted, on the 4th day of December, 1917, the offer of the Mercantile Bank made on November 13, 1916, the Capital City Bank was released from the obligation and the status of Fridge, Bauer, Caruthers, and Wren was changed from that of sureties to that of principal debtors in solido. Their previous secondary and conditional liability became a primary and fixed liability in the sum of $27,500. The Mercantile Bank could not, after that time, have claimed from the guarantors more than that sum, nor could the guarantors by their acceptance of the proposition at the meeting of the Capital City Bank have escaped joint personal and solidary liability for less than this amount.

Such was the situation of the parties, when on March 12, 1918, the Mercantile Bank, through its president, issued the following receipt to A. Bauer:

"Receipt is hereby acknowledged of a note from A. Bauer dated this date amounting to sixty-eight hundred, seventy-five ($6,875.00) dollars, payable on demand and secured as stated therein by 100 shares of the capital stock of the Rosenfield Dry Goods Company, of this city, which is accepted in accordance with a certain resolution of the board of directors of this bank of date November 13, 1917, in full settlement of his obligation as one of the guarantors of the affairs of the Capital City Bank, under a contract of agreement of date December 6, 1916.
"Mercantile Bank,
"[Signed] O. B. Steele, President."

Subsequently, on April 23, 1918, the Mercantile Bank transferred to Dr. Fridge all its

rights and claims against Dr. J. A. Caruthers and A. A. Wren, with full subrogation, and it is upon this transfer with subrogation that plaintiff has brought the present suit against Dr. Caruthers, wherein he seeks to recover the sum of $13,750.

The district court rejected plaintiff's demand and dismissed his suit.

[1] We are convinced from our appreciation of the facts in this case, and our understanding of the law pertinent thereto, as recited in the foregoing statement, that at the time plaintiff acquired from the Mercantile Bank, on April 23, 1918, all the rights and claims which it might have against Dr. Caruthers and Wren, such rights and claims had already been extinguished by the discharge which it had granted to Bauer on March 12, 1918. The agreement proposed by the resolution of the board of directors of the Mercantile Bank on November 13, 1917, accepted by the board of directors of the Capital City Bank on December 4, 1917, and accepted at the same time by the four sureties, changed the contract from one of suretyship, to a fixed and primary obligation, wherein the obligors bound themselves unconditionally, jointly, and in solido. The Mercantile Bank expressly consented to the change from a contract of suretyship to an unconditional obligation in order to obviate litigation which would undoubtedly have arisen in adjusting the liability of the four sureties. Having then consented to, accepted, and substituted the joint and solidary, fixed and unconditional obligation of Fridge, Bauer, Caruthers, and Wren in lieu of their former indeterminate accessory obligation as sureties, the Mercantile Bank by the remission and discharge which it gave to Bauer on March 12, 1918, without expressly reserving its rights against Fridge, Caruthers, and Wren, thereby also discharged them under the provision of article 2203 of the Civil Code, which reads as follows:

"Art. 2203. The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter."

This article of our Code is a literal translation of article 1285 of the French Code. The French commentators are unanimous in holding that the article means just what it says: From the fact that the creditor renounces his right as to one (of the solidary debtors) the law concludes that he intends to renounce his right as to all. Each of the solidary obligors is liable for the whole debt as principal debtor to the creditors and is only liable as surety to his codebtors, and that is why the creditor may not discharge one without discharging the others. Planiol "Traite de Droit Civil," vol. 2, No. 749; Huc "Commentaire du Code Civil," vol. 8, No. 138; Aubry et Rau "Droit Civil Francais," vol. 4, p. 205; Laurent "Principes de Droit Civil," vol. 17, No. 340.

Believing that the judgment of the district court is correct, we conclude that it should be affirmed, and

It is so ordered.

On Application for Rehearing.

By the WHOLE COURT.

PER CURIAM. [2] Appellant suggests that "there is a conflict between article 2100 and article 2203 of the Revised Civil Code," and he urges that we should follow article 2100 instead of article 2203.

If there be such conflict, then it clearly behooves us to choose which of the two articles we should follow; and, having once so chosen, consistency would then require us to adhere to that choice, to the end that there may be some certainty about the law on the subject.

But our predecessors have uniformly chosen to follow article 2203, and not article 2100. Irwin v. Scribner, 15 La. Ann. 583; Orr & Lindsey v. Hamilton, 36 La. Ann. 790;

Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 South. 319.

And since no compelling reason can be assigned for changing the position thus taken, we feel constrained to adhere thereto.

A rehearing is therefore refused.

O'NIELL, C. J., concurs, but does not find any conflict between articles 2100 and 2203 of the Code.