399 So.2d 1216 (1981)
Florentine DITCH et al.
v.
Fanny Katz FINKELSTEIN et al.
No. 14200.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*1218 Edward J. Milligan, Jr., Lafayette, for plaintiffs.
Jack C. Caldwell, Franklin, for defendants.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The main issue presented is whether or not the trial court erred in sustaining the objection of res judicata. Because we find the court acted properly under the circumstances, we affirm.
The facts giving rise to this litigation are as follows: Ozeme Ditch died September 16, 1920, and his wife Fanny died January 4, 1926. They were survived by five children and one grandchild. On February 26, 1927, these heirs (Willard Ditch, Wallace Ditch, Florence Ditch Chargois, Agnes Ditch Arceneaux, John M. Ditch and Irma Ditch Shelburne) entered into an "Act of Partition, Compromise and Settlement." The act was recorded in the conveyance and mortgage records of St. Mary Parish and described some fifteen separate tracts of land formerly owned by Ozeme and Fanny Ditch. The purpose of the act was reflected by the following language:
"Said appearers declared to me, Notary, that desiring to carry out the expressed wishes of their deceased parents, and grandparents, the said Ozeme Ditch and Fanny Ray Ditch, and in order to compromise and settle any and all differences, claims, or demands which they have, or may have against one another by virtue of being an heir of said Ozeme Ditch and of said Fanny Ray Ditch, that they hereby fully ratify and confirm any and all conveyances, donations, inter vivos or causa mortis, or other transactions made to, or in favor of, any of them by said Ozeme Ditch, and said Fanny Ray Ditch, or either, recognizing and quieting the title and possession of such appearer, or appearers, in and to the property, or properties, so conveyed, donated, or otherwise transferred to him, her, or them; do hereby give full acquittance to each other of every kind and species of claim, and demand, which they, or any of them has, or may have against the others, or any of them, by virtue of being an heir of said Ozeme Ditch and of Fanny Ray Ditch, deceased; and hereby agree upon, and make the following division and partition between them of the property hereinabove described, now owned by them in indivision, to wit:" (Emphasis added.)
The parties to the agreement then divided all of the property among the heirs. Willard Ditch was granted certain tracts, one of which is the subject of this litigation. The pertinent property was described as follows:
"A tract of land lying partly within the corporate limits of Morgan City, and partly adjoining the City limits, in the Parish of St. Mary, State of Louisiana. Bounded on the north, northeast and east by lands sold to A. F. Storm, Et Als. by O. Ditch; on the south in part by the corporate limits of the City of Morgan City, and in part by property owned by W. O. Ditch, Et Als., and on the west by a line drawn parallel to and 125 feet east of the east line of Eighth Street, in the City of Morgan City, and of the extension of said Street to the property of A. F. Storm, Et. Als., the northern boundary of the tract herein described."
On April 23, 1928, a judgment of possession was entered, granting to each heir an undivided one-sixth interest in the property belonging to the succession of Ozeme and Fanny Ditch. Attached to the judgment of possession was a descriptive list which described the same property which had previously been listed in the act of compromise.
*1219 Sometime prior to 1946 Willard Ditch died and left his property to his wife Clothilde, and to his daughter. The daughter later sold her interest to Clothilde who in turn sold a portion of the above described property to Milton Levy, Louis Finkelstein and Joseph Finkelstein.
On October 3, 1979, the heirs of Ozeme and Fanny Ditch[1] filed suit against the Levy and Finkelstein heirs.[2] They alleged Clothilde Ditch had conveyed Willard Ditch's undivided interest in the Ditch succession to defendants' ancestors, therefore plaintiffs and defendants were co-owners of the Ditch succession property. Defendants were alleged to have sold or otherwise burdened the property without plaintiffs' knowledge or consent. Plaintiffs asked to be recognized as co-owners with defendants and sought an accounting and a partition by licitation. They did not mention the act of partition.

OBJECTION OF RES JUDICATA
In response to the suit defendant filed the peremptory exception raising the objection of res judicata as authorized by La.Code Civ.P. art. 927. They argued the compromise entered into by the Ditch heirs had acquired "the authority of the thing adjudged" and therefore barred further suit as to the ownership of the property. They reasoned the compromise and partition clearly vested full ownership of the disputed property in Willard Ditch, therefore the property derived from him was not owned in indivision and no further litigation should be allowed.
Plaintiffs amended certain answers to interrogatories to state they did not deny the existence of the act of partition but contended the act was incomplete because it did not list all of the property of the succession of the Ditches. This theory was further explained in a post trial memo wherein plaintiffs contended the entire "L" shaped tract (referred to at trial as the "blue tract") claimed by the Levy and Finkelstein heirs was not granted to Willard Ditch in full ownership. They reasoned since only a part of the tract was specified in the compromise, the balance of the property remained owned in indivision by all of the Ditch heirs. Plaintiffs argued it was this undivided interest that was transferred from Clothilde Ditch to Levy and the Finkelsteins. They contended since only part of the "blue tract" was partitioned in the compromise agreement there was nothing to bar suit concerning the remaining undivided portion of the property.
After a hearing on the exception the trial judge sustained the exception and dismissed the suit. The court concluded all of the succession property had been divided in the act of compromise, Willard Ditch had obtained the "blue tract" in full ownership and therefore any subsequent suit concerning the ownership of the "blue tract" was barred. Plaintiffs have appealed.
In determining the appropriateness of the res judicata objection this court is faced with a simple issue but one quite difficult to articulate. On the one hand the defendants believe they own a certain specified tract of land derived from the title of Willard Ditch. As vendor, Willard Ditch believed he had full ownership of this land by the terms of the act of compromise and partition. If this is true the ownership of this land was made res judicata by the partition and any subsequent litigation about the ownership should be barred. Plaintiffs, on the other hand, argue at least part of the land defendants believe they own was not granted to Willard Ditch in the act of compromise. They insist the compromise granted to Willard Ditch only a part of the tract in complete *1220 ownership. The remainder of the tract was not disposed of and therefore continued to be owned in indivision by the six Ditch heirs. Therefore, as to that portion of the land, Willard Ditch could only have sold his one-sixth undivided interest. If this is true then the ownership of the undivided tract is subject to litigation, because its ownership was not determined in the compromise agreement.
After carefully examining the record we conclude the trial court was correct in sustaining the objection. We are convinced the partition agreement divided all of the land owned by the succession of Ozeme and Fanny Ditch. The property granted to Willard Ditch in full ownership is the same property being claimed to be owned in indivision by the plaintiffs, therefore the suit is barred by the compromise.
There is no question that a compromise has a force equal to the authority of the thing adjudged. La.Civ.Code art. 3078. Further, the objection of res judicata is the proper method of raising a compromise as a bar. Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App.3d Cir. 1967); Bowden v. State Farm Mutual Automobile Ins. Co., 150 So.2d 655 (La.App.3d Cir. 1963).
As a preliminary matter, we find it unimportant that the act of partition was entered prior to the time of the judgment of possession. It is true one must own property before one has the right to partition property. Samuels v. Parsons, 146 La. 262, 83 So. 548 (La.1919), rehearing denied 1919. But in Louisiana, ownership of succession property passes to the regular heirs as of the moment of death, without the necessity of formal proceeding. La.Civ. Code art. 940, 941; Hibbert v. Mudd, 294 So.2d 518 (La.1974). Therefore, at the time the heirs executed the act of compromise they did in fact "own" the property with which they were dealing.
Appellant argues the exception was improperly sustained because the three essential requirements for res judicata were not met. La.Civ.Code art. 2286 sets forth the requirements as follows:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
We are convinced the "thing demanded" in the act of compromise and in this litigation are the same. We reached this conclusion by reading the testimony taken at the hearing and by examining the various exhibits. Defendants have contended throughout the property granted to Willard Ditch (part of which was later conveyed to the defendants) was a certain area referred to as "the blue tract" on a map prepared by defendants. At the hearing on the exception various experts were called by each party to determine exactly what land was granted to Willard Ditch. Robert Miller was accepted by the court as an expert in the area of civil engineering and land surveying. He testified for the defendants that in his opinion the property description in the partition act roughly described the "blue tract." He acknowledged some of the boundary descriptions were erroneous but stated this was not unusual, particularly in old documents. Robert Romero, an expert in title abstracting, stated he had examined the pertinent documents and he agreed with the conclusions of Mr. Miller.
Plaintiff's title abstracting expert, Mr. Roland Kidd, testified in his opinion the entire blue tract was not described in the act of compromise and only a part of it was intended to be given to Willard Ditch in full ownership. In his written reasons for judgment the trial court noted Mr. Kidd was not a disinterested party because the plaintiffs had agreed to give him one-half of any lands recovered in the suit as payment for his services. As always, the trial court is granted much discretion as to credibility of the witnesses and we find no manifest error in the court's decision to discount the testimony of Mr. Kidd.
Plaintiffs maintain the "thing demanded" is not the same because the act of compromise *1221 did not dispose of all of the succession property and in particular, did not dispose of part of the "blue tract." We do not agree. The descriptive list filed as a part of the succession proceedings contains the description of the same property described in the act of compromise.[3] The same description is found in the judgment of possession. Of particular interest is the following language found in the descriptive list:
"... the following is a true and correct itemized detailed statement of all the property belonging to the community of acquets and gains heretofore existing and flowing from the marriage of their deceased father, Ozeme Ditch, and their deceased mother, Fanny Ray Ditch, his wife and of all the property belonging to their succession...." (Emphasis added.)
Since the descriptive list and the act of compromise contain the same property, it is apparent the act of compromise was intended to dispose of all property of the succession. Since all of the succession property was disposed of, any further litigation concerning the ownership of the property should be precluded. La. Civil Code arts. 3078, 2286.
Plaintiffs argue the only part of the land granted to Willard Ditch in complete ownership was that portion of the land lying in section 2. (Other portions of the disputed tract are in section 11 and section 12.) They allege the land is described as lying in section 2 in the act of compromise. A reading of that act shows their argument to be totally without merit. The language relied upon by plaintiffs is found in the part of the agreement that grants Willard Ditch the "blue tract" using the property description quoted above and then proceeds as follows:
"As further consideration of the conveyance to him of the above described property, the said Willard Ditch hereby declared that the timber on that portion of the tract of land hereinabove secondly described, lying in Section 2 T. 16 S. R. 12 is by him conveyed to Wallace M. Ditch...." (Emphasis added.)
Even a cursory reading reveals the reference to section 2 deals with the granting of timber rights on a certain part of the land, and in no way purports to be a description of the entire tract.
In conclusion, it is clear to us the thing demanded[4] in the act of compromise (Willard Ditch's full ownership of the "blue tract") and the thing demanded in the suit (a portion of this same property) are the same.
We further conclude the demand in the compromise and the demand in the lawsuit are based upon the same cause of action. It has been noted by the Louisiana Supreme Court that "cause of action" is a mistranslation and should read simply "cause." In order to determine the meaning of the word "cause" civilian doctrine should be examined. Mitchell v. Bertolla, 340 So.2d 287 (La.1976), rehearing denied 1976.
In his Civil Law Treatise (Traité élémentaire de droit civil), Planiol defines cause as "the juridical or material fact which is the basis of the right claimed, or the defense pleaded." 2 Planiol, Civil Law Treatise, pt. 1, no. 54 A(6) at 38 (11th ed. La.St.L.Inst. transl. 1959). In this same source he states, "Without doubt no difficulties are encountered when the claim has as its object a real right or a debt: the cause is the principle giving rise to the right; in the case of a real right it is a purchase, a donation, a legacy, etc.;"
Using Planiol's definition as a guideline we conclude the "cause" (i. e., the principle giving rise to the right claimed) of the compromise is an inheritance. It is by virtue *1222 of their status as regular heirs that the parties to the compromise derived their rights of ownership of the land. Similarly, the rights of ownership claimed in the lawsuit are derived from the parties' inheritance in that plaintiffs clearly alleged they were entitled to the ownership of certain property because they were heirs of Ozeme and Fanny Ditch. Since both the compromise and the lawsuit have as their cause an inheritance, we find no difficulty in concluding the requirement of "same cause" has been satisfied.
The third element that must be fulfilled is the suit must be between the same parties and formed by them against each other in the same quality. The compromise was between the heirs of Ozeme and Fanny Ditch. The suit is between the heirs of five parties to the compromise and the successors in title of the sixth party to the agreement. The parties to the compromise all derived their title from Ozeme and Fanny Ditch. The parties to the lawsuit all derive their title (originally) from Ozeme and Fanny Ditch. There is no requirement the parties be actually the same physical parties, but only that they are the same parties in the legal sense of the word. Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965), rehearing denied 1965; Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La.1974), on remand 324 So.2d 870 (La.App.3d Cir. 1975). This requirement of identity of the parties is met where a successor or privy of one of the parties is involved. Clearly, all the parties involved in the lawsuit are successors to the original redactors of the compromise agreement.
In conclusion, because the three requirements have been met, we hold the objection of res judicata was properly sustained. The judgment of dismissal is affirmed.

ADMISSIBILITY OF PROFFERED LETTER
Appellants contend the trial court erred in refusing to allow into evidence a letter allegedly written by Mr. Leonard Wise, a deceased attorney, to Milton Levy, Louis Finkelstein and Joseph Finkelstein, all deceased. The letter was dated December 12, 1949 and was written in response to questions concerning an unprobated will written by Fanny Ditch. In the letter Mr. Wise opined that Willard Ditch had received only an undivided interest in part of the "blue tract." The trial court refused to admit the letter citing Lafleur v. Sylvester, 135 So.2d 91 (La.App.3d Cir. 1961) for the proposition that attorneys should not be permitted to state their legal opinions as to the legal construction to be placed on a written instrument.
We are in full agreement with the trial court. The letter obviously represents the legal opinion of the attorney and is hearsay as well. It has been held that letters written by an attorney to his client are inadmissible (after the attorney's death) because the letters are private writings between the attorney and client and the defendant would have no way of cross-examining the attorney. Heinz v. Tourne, 18 So.2d 46 (La.App.Orl. Cir. 1944). The trial court acted properly in sustaining the objection to the admissibility of this letter.

EXPERT WITNESS FEES AND ASSESSMENT OF COSTS
Appellant complains the amount of the expert witness fees was excessive and should be reduced accordingly. We disagree. The amount of expert fees is a matter within the discretion of the trial court and should not be disturbed unless found to be manifestly erroneous. La.R.S. 13:3666; Prentice Oil & Gas Co. v. Caldwell, 355 So.2d 1327 (La.App. 1st Cir. 1977), writ refused 1978. Because of the extremely complicated nature of the case we find no error in awarding Mr. Robert Miller $6,260.00 and Mr. Robert Romero $1,500.00 for their services. Mr. Miller and his staff prepared two aerial photo overlays, two extensive maps of the property, and studied the numerous deeds in order to understand the property description. Mr. Romero also examined all pertinent deeds and ran "take-offs" on all transactions by Ozeme and Clothilde Ditch. There is no question that these tasks took many hours to complete.
*1223 Appellant also complains the trial court erred in awarding appellee $222.15 for the cost of obtaining certified copies of the various documents used to prove the title to the land. We find no error here. Except as otherwise provided by law the court may render judgment for costs or any part thereof against any party as it may consider equitable. La.Code Civ.P. 1920. It is firmly established the trial court has a great deal of discretion in this matter. Succession of Batton v. Prince, 384 So.2d 506 (La.App.2d Cir. 1980); Gatheright v. State Farm Mut. Auto. Ins. Co., 352 So.2d 428 (La.App.3d Cir. 1977). Considering the circumstances surrounding this case, we feel it is entirely equitable that appellants be cast for these costs. Because of the appellants' suit, appellees were forced to "prove their title" to the disputed land and it was absolutely necessary to procure the certified copies of the documents in order to do so. It has been held that in a petitory action, costs of deeds to land involved (where necessary to the cause) were properly allowed as costs. Levy v. Stephens, 54 So.2d 842 (La.App.2d Cir. 1951).
For the foregoing reasons, the judgment of the trial court is affirmed. Appellants are to pay all costs of these proceedings.
AFFIRMED.
NOTES
[1] Florentine Ditch, Milton J. Arceneaux, Charles B. Arceneaux, Floribell A. Manou, Sr., Irma Ditch Yarborough, Leo Ditch, Melvin F. Ditch, Roland J. Ditch, Elaine D. Thayer, Patricia Ditch Resweber, Olivier P. Ditch, Lionel A. Ditch, and Austin Ditch.
[2] Fanny Katz Finkelstein, Shirley Finkelstein Saltz, Paula Finkelstein Nelkin, Ida Elaine Finkelstein, Ruth Oppenheimer Finkelstein, individually and in her capacity as testamentary executrix of the succession of Joseph J. Finkelstein, Ann Jacob Levy Choa, Ruth Tophan Levy Phillips, Mary Lynn Levy Loket, Gayle Levy Lewis, Carol Jean Levy Lubritz.
[3] There are only two minor variations in the descriptions in the two documents, neither of which affect the substance of the property being described.
[4] Since the basis of the res judicata objection is a compromise, the term thing "demanded" is not particularly descriptive, since by nature a compromise is a mutual agreement and there is no thing "demanded" in the usual sense of the word. However, in a very liberal sense it could be said Willard Ditch was "demanding" to be declared full owner of the now disputed tract of land.