**William E. RYALS Sr., et al.**

v.

**The HOME INDEMNITY COMPANY, et al.**

**Civ. A. No. 81–0567.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

July 6, 1983.

---

Kenneth N. Simmons, Atty. at Law, Many, La., for plaintiffs.

Herschel E. Richard Jr., Cook, Yancey, King & Galloway, Attys. at Law, Shreveport, La., for defendants.

## MEMORANDUM RULING

STAGG, District Judge.

INTRODUCTION:

This diversity action was brought to recover damages for injuries sustained by William E. Ryals Jr., at age 8, while he was playing on and around a pumping unit located on an oil and gas lease operated by defendant Alpha Oil & Gas, Inc. (hereinafter "Alpha"). Plaintiffs brought this action against Alpha and its insurer, the Home Indemnity Company (hereinafter "Home Indemnity"), as well as two individual nonresident defendants who are corporate officers of Alpha.

Defendants have filed a motion for summary judgment and to dismiss, the focal point of which is that a final judgment has been procured against Home Indemnity in a state court action involving the same accident and injuries at issue here and that judgment has been fully paid by Home Indemnity. Defendants argue that payment of the judgment by Home Indemnity, as insurer of Alpha, bars this action. The only issue of fact over which there is any dispute involves whether or not plaintiffs made an effective reservation of rights in the state court "satisfaction of judgment" document. For reasons discussed later, the court finds that this single factual dis-

pute does not affect resolution of this motion under the governing legal principles. Therefore, no "genuine issues of material fact" are present, and resolution of this motion depends solely on this court's determination of the issues of law.

RELEASE OF SOLIDARY OBLIGORS

The principal argument asserted by the defendants for dismissal of this action is that satisfaction of the state court judgment released all solidary obligors. This argument must also be considered in the context that plaintiffs do not dispute that prescription would bar any suit against a tortfeasor not solidarily liable with Home Indemnity.

■ As noted by defendants, Louisiana Civil Code art. 2091 provides that:

There is an obligation *in solido* on the part of the debtors, when they are all obligated to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.

By its plain terms, it would appear that Article 2091 would bar any further action in this court due to the satisfaction of the state court judgment. Plaintiffs did not initially respond to this argument by the defendants but placed sole reliance on *Doyle v. State Farm (Mut.) Ins. Co.*, 414 So.2d 763 (La.1982), as allowing, under the doctrine of *res judicata*, the relitigation of damages. Given the decision in *Doyle*, it could be argued that if *res judicata* does not bar the relitigation of damages, then a judgment against one solidary obligor does not fix the amount of the debt, and damages can be relitigated. However, *res judicata* under Civil Code art. 2286 and the release of solidary obligors under Civil Code art. 2091 are not synonymous legal theories. *Doyle* did not address the issue of solidary obligation. Furthermore, any reliance on *Doyle*, in terms of its impact on Civil Code art. 2091, is completely misplaced given the subsequent Louisiana Supreme Court decision in *Hoefly v. Government Employees Insurance Company*,

418 So.2d 575 (La.1982). While both *Hoefly* and *Doyle* deal with the relationship of the uninsured motorist insurer to suits brought against the tortfeasors, one deals with *res judicata* and the other deals with solidary liability with neither opinion making reference to the other legal theory.

In *Hoefly*, the Court held that the uninsured motorist insurer was solidarily liable with the tortfeasor and implicitly overruled prior decisions inconsistent with that holding. 418 So.2d at 579–60. While it was unnecessary for resolution of the issues before the Court, *i.e.*, the interruption of prescription, it is significant that the Court went out of its way to state:

> When payment is made by either the tortfeasor or the uninsured motorist carrier the other is exonerated toward the creditor as to the solidary obligation. This is a direct consequence of each debtor being obliged to the same thing so that each may be compelled for the whole, as if he were the sole debtor. 4 C. Aubry & C. Rau, *supra*, p. 27. Moreover, the underlying purpose of both delictual responsibility and uninsured motorist coverage is to promote and effectuate complete reparation, no more or no less. Accordingly, as to the debt to which the tortfeasor and uninsured motorist carrier are solidarily obliged, payment of it by one exonerates the other toward the creditor.

418 So.2d at 579. A comparison of *Doyle* and *Hoefly* demonstrates that the concept of *res judicata* and the release of solidary obligors under 2091 are separate and distinct issues and that it is *Hoefly* that controls the issue at hand, not *Doyle*. Furthermore, the case principally relied upon by defendants in this area, *Granger v. General Motors Corporation*, 171 So.2d 720 (La.App.1965), *does* clearly indicate that the satisfaction of a judgment against one solidary obligor releases the others and was favorably cited in *Hoefly* at 418 So.2d 577 and 579.

■ As already noted, plaintiffs did not initially respond to the argument of defendants that the state court judgment released the solidary obligors. However, in their reply memorandum filed on April 8, 1983, plaintiffs indicated that under Civil Code arts. 2101 and 2102 the reservation of rights attempted in the state court satisfaction of judgment document preserves their action here. The court agrees with defendants that Civil Code arts. 2101 and 2102 are facially inapplicable to this case. There is no issue of proportionate share or arrearages of interest from one debtor in this case. The sole issue is whether payment of the state court judgment extinguished the entire debt. On the other hand, assuming that an effective reservation of rights was made in the state court satisfaction of judgment document, this raises the issue of whether Civil Code art. 2203 would permit the present action. Article 2203 provides that:

> The remission or conventional discharge in favor of one of the codebtors *in solido*, discharges all the others, unless the creditor has expressly reserved his right against the latter.
>
> In the latter case, he cannot claim the debt without making a deduction of the part of him to whom he has made the remission.

■ Under Article 2203, the general issue is whether or not the reservation of rights in a satisfaction of judgment prevents the discharge of other solidary obligors. However, for a reservation of rights to have any effect, the satisfaction of a state court judgment must be tantamount to a "remission or conventional discharge" contemplated by Article 2203.

The only case this court was able to find that even remotely addressed this issue was *Barr v. Stephens Chevrolet, Inc.*, 245 So.2d 755 (La.App.1971). In that case, a default judgment was entered against the dealer, and the co-defendant, General Motors Corporation, sought dismissal of the action after the dealer paid the judgment in full. The Court initially found the issue to be governed by Article 2203 and after quoting the article found that:

> Thus, for plaintiffs to proceed against General Motors Corporation—a solidary

784

debtor with Stephens Chevrolet, Inc.— since Stephens has already paid plaintiffs, it becomes a prerequisite for this action that plaintiffs have *expressly reserved rights* against General Motors (under LSA–C.C. art. 2203). After a careful examination of the record, we are unable to find any such reservation of rights by plaintiffs and in particular there is no reservation of rights against General Motors Corporation in the default judgment rendered October 15, 1968.

Furthermore, the default judgment determined the quantum of the liability of one of the obligors. Upon payment of this amount, this obligation is extinguished thus extinguishing the obligation of all solidary obligors.

In absence of the requisite reservation of rights by plaintiffs to proceed against General Motors Corporation, we find plaintiffs have no basis for this appeal, and thus adopt in part the trial judge's reasons for judgment:

"The plaintiff in his petition has alleged that Stephens Chevrolet and General Motors are liable in solido. Plaintiff's judgment against Stephens Chevrolet was fully satisfied. Therefore, the exception of no cause of action is well founded.

"Article 2092, RCC., says that the obligation may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing. Even though the obligation of General Motors may be different from Stephens Chevrolet, there is still an imperfect solidarity, and the payment by one exonerates the other toward the creditor. *Granger v. General Motors Corporation*, 171 So.2d 720 (La.App. 3d Cir.1965)."

245 So.2d at 756–57. While this language would seem to indicate that a reservation of rights in the context of a satisfied judgment might preserve an action against other solidary obligors under 2203, that issue was not actually decided by *Barr* because it was unnecessary to do so due to the absence of any such reservation. Additionally, the second paragraph in the above quote is an indication that the Court recognized that once a judgment is *satisfied* the debt is extinguished with or without a reservation of rights. Despite the absence of jurisprudence clearly resolving this issue, the court believes that reference to other Code articles and jurisprudence interpreting those articles as well as other decisions interpreting Article 2203 clearly indicate that the satisfaction of the state court judgment released all solidary obligors in this case.

While Civil Code articles 2091 and 2095 together contemplate the possibility of separate actions against solidary obligors, and even the rendition of more than one judgment, they do not contemplate the satisfaction of more than a single debt. For example, in *Bonacorso v. Turnley*, 98 So.2d 295 (La.App.1957), the Court held that it was in fact possible to have two separate judgments, each against a separate solidary obligor. However, this finding was based on the fact that the first judgment had not been satisfied. The Court in *Bonacorso* pointed out that while two judgments were possible this was because "payment of the debt by one of the solidary debtors is required to extinguish the creditors' right to enforce its payments against all of them, whether or not the claim against any of them has been reduced to judgment. Articles 2091, 2095, LSA–C.C." *Id.* at 299.

In terms of the specific language of Article 2203:

The above article is placed in the section entitled: "Of the Remission of the Debt," and it appears that the words "remission" and "conventional discharge," found in the article, are used as synonyms. A "remission," in the civil law, "is a release of a debt"; and "it is conventional when it is expressly granted to the debtor by a creditor having a capacity to alienate." Bouvier.

*Hall v. Allen Mfg. Co.*, 133 La. 1079, 63 So. 591, 592 (1913). This discussion of the phrase "remission or conventional dis-

charge" must be considered in light of the fact that "[i]t is the firmly established jurisprudence of this State that a debt, having been reduced to judgment, is merged therein and that it no longer exists as a distinct obligation, having acquired the status of the thing adjudged." *Cassiere v. Cuban Coffee Mills, Inc.*, 225 La. 1003, 74 So.2d 193, 196 (1954). Thus, when a debt has been reduced to judgment, the two become merged and the payment of the judgment is a satisfaction of the debt and not the release of a debt as contemplated by 2203. This view of the phrase "remission or conventional discharge" contained in Article 2203 gains further support from the following discussion of Article 2203:

This article of our Code is a literal translation of article 1285 of the French Code. The French commentators are unanimous in holding that the article means just what it says: *From the fact that the creditor renounces his right as to one (of the solidary debtors) the law concludes that he intends to renounce his right to us all.* Each of the solidary obligors is liable for the whole debt as principal debtor to the creditors and is only liable as surety to his codebtors, and that is why the creditor may not discharge one without discharging the others.

*Fridge v. Caruthers*, 156 La. 746, 101 So. 128, 130 (1924) (emphasis supplied). This characterization of Article 2203, as contemplating the renunciation of a right by a creditor, was echoed in a more recent case as follows:

Another consequence of solidarity is embodied in article 2203, which provides in pertinent part:

"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter."

If the debt is remitted, then the obligation is extinguished, C.C. 2130, and all other solidary obligors are discharged. Where, however, the creditor reserves his rights to proceed against the other solidary obligors, the debt is not extinguished by remission, and the release does not inure to the benefit of the other solidary obligors. *By reserving his rights, the creditor makes clear that he is not fully compensated and that he will proceed against the other solidary obligors.*

*Sampag v. Morton Salt Co.*, 395 So.2d 326, 328 (La.1981) (emphasis supplied).

The Louisiana Supreme Court decisions in *Hall, Fridge,* and *Sampag* reflect a consistent view of Article 2203 as contemplating something other than a claim being reduced to judgment and satisfied. The emphasized language in *Sampag* speaks of a unilateral decision by the creditor as to whether he is satisfied. However, when a claim has been reduced to judgment, it is the court and not the creditor that determines what amount is due. Certainly, in terms of the *Fridge* and *Hall* decisions, the act of the creditor pursuing his claim to judgment and accepting payment of that judgment cannot, by even the most strained of legal arguments, be considered as a renunciation by the creditor of any right against a debtor.

Turning to the interrelationship of Article 2203 with other articles of the Civil Code, it should first be noted that the articles dealing with remission of a debt (Articles 2199–2206) seem to contemplate dealings between the creditor and debtor without the intervention of the judicial process. Furthermore, this section is but one in Chapter V dealing with "The Manner In Which Obligations May Be Extinguished." Of even more significance is the fact that "remission of a debt" is a separate section of Chapter V from the articles dealing with extinguishment of a debt by payment (Articles 2131–69) or other sections of the Code dealing with judgments. Additionally, while in another context, the Louisiana Supreme Court has previously held that Article 2203 simply does not deal with judgments when it observed that:

Articles 2199 and 2203 of the Revised Civil Code have been considered by this Court in a number of cases, and it is well

recognized that the underlying principle is that there is but one debt, and hence there can be but one satisfaction of it. *Reid v. Lowden*, 192 La. 811, 189 So. 286, and authorities cited therein. *In other words, the debt is what is contemplated in these articles and not the judgment that evidences the debt.*

*Converse v. Victor & Prevost*, 208 La. 47, 22 So.2d 737, 738 (1945) (emphasis supplied).

As if the above was not enough, any construction of Article 2203 permitting the maintenance of the current action would fly in the face of the clear language of the codal articles dealing with solidary obligation. A simple reading of Articles 2088–2107 show that they consistently contemplate the existence of but a single debt. If damages can be relitigated as to each solidary obligor by simply a reservation of rights in the satisfaction of judgment, these codal articles are meaningless. This potential inconsistency is greatest when the right of contribution among solidary obligors is applied to the situation at hand.

Under Louisiana law if a plaintiff releases a joint tortfeasor, he deprives the remaining joint tortfeasor of his right to contribution against the one who has been released. *Harvey v. Travelers Insurance Co.*, 163 So.2d 915, 920–22 (La. App.1964). *See Wall v. American Employers Insurance Co.*, 386 So.2d 79, 82 (La.1980). Because the plaintiff has thus prejudiced the tortfeasor still liable to him, he suffers reduction of the damages recoverable from the remaining tortfeasor by the virile share that would have been due from the released tortfeasor. *Harvey v. Travelers Insurance Co.*, 162 So.2d at 921–22; *Brummerloh v. Firemen's Insurance Co.*, 377 So.2d 1301, 1313 (La.App.1979). *See Wall v. American Employers Insurance Co.*, 386 So.2d at 82.

*Dunn v. Sears, Roebuck & Co.*, 645 F.2d 511, 513 (5th Cir.1981). Thus, if plaintiffs "released" Home Indemnity and effectively reserved their rights under Article 2203, in the satisfaction of judgment, it would seem that this unilateral act of the plaintiffs would completely deprive Home Indemnity of its right to seek contribution against any joint tortfeasors.

The various possibilities present in this case adequately demonstrate the conflict between allowing the present action under Article 2203 and codal provisions dealing with the right of contribution. If the plaintiffs were allowed to procure a second judgment against the corporate officers and have that judgment satisfied in full, there certainly would be no way to force the corporate officers to pay Home Indemnity their virile share of the state court judgment. The only other alternative is to either deny contribution and reduce a second judgment to the virile portion of the defendants before the court or to only allow recovery of damages found in excess of the original state court judgment. If the judgment is reduced to reflect payment by the present defendants of only their virile portion, Home Indemnity obviously cannot enforce contribution for its judgment against those joint tortfeasors. If the court were to deduct the amount paid by Home Indemnity from any judgment entered in this court, the issue becomes how to determine who owes a virile portion, based on which judgment. For example, if an award in the present action was made for double the amount awarded in state court, even deducting the amount of the state court judgment would only result in the corporate officers and Home Indemnity both paying the same amount to the plaintiffs. In that circumstance, how could any court recognize an action for contribution by either Home Indemnity or the corporate officers, the net result of which could only mean that one would pay substantially more than the other? In short, if the reservation of rights attempted by the plaintiffs in the state court action is found to permit another action against the solidary obligors under Article 2203, the whole area of contribution amongst solidary obligors deteriorates into a mass of absurd possibilities.

In summary, whether considering 2203 in light of its interrelationship with other code articles or in light of the jurisprudence generally interpreting that article, it is crystal clear that the phrase "remission or conventional discharge" does not include judgments which have been satisfied, but rather refers to releases connected with settlements of claims. Therefore, the reservation of rights attempted by plaintiffs in the state court satisfaction of judgment has no effect under Article 2203. The solidary obligors had but one obligation which has been satisfied and all remaining solidary obligors have been released under Article 2091. Accordingly, the present action cannot be maintained as to any of the defendants in this lawsuit.

## RES JUDICATA:

### *Generally.*

While the above ruling is dispositive of the motion for summary judgment, it is appropriate to address the issue of *res judicata* for two reasons. The first reason is that plaintiffs placed such reliance on jurisprudence dealing with *res judicata* in responding to the defendants' argument that Article 2091 barred this action. The second reason is that *res judicata* does provide an alternative basis for granting the defendants' motion as to some of the defendants.

In the landmark case of *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154 (La.1978), the Louisiana Supreme Court made it clear that:

> The introduction of collateral estoppel into our system would effectuate a change fundamentally different from that established by ancient legislation. By choosing to define res judicata in narrow terms, the legislators apparently concluded that the inconvenience caused by relitigation is outweighed by the injustice of perpetuating erroneous judicial decisions. *The adoption and application of an issue preclusion device which would broaden the operation of res judicata in Louisiana would subvert the original ideal established by codes.*

While this court has on occasion recognized collateral estoppel in our system of law, no clear understanding of the application of that doctrine has been developed in the cases or in legal literature. Therefore, we hold that none of the variations of the common law doctrines of res judicata apply in Louisiana.

*Id.* at 157 (emphasis supplied). *Welch* did not change the law as to what constituted *res judicata* in Louisiana, but merely eliminated the application of other issue preclusion devices. This court is *Erie*-bound to apply Louisiana's peculiar form of *res judicata* to the question at hand.

"Res judicata in Louisiana is *stricti juris*, forbidding relitigation only on the ultimate judgment rendered, but not extending broadly to matters that 'might have been litigated' and not comprehending intermediate facts. Under the Louisiana view, less weight is attached to finality than in common law jurisdictions, and all doubts are resolved in favor of relitigation." *Maher v. City of New Orleans*, 516 F.2d 1051, 1056 (5th Cir.1975). Concerning the specific requirements for application of *res judicata*, it has been stated:

> Louisiana legislative authority for res judicata establishes a presumption of correctness and precludes re-litigation of the object of a judgment when there is (1) identity of the parties, (2) identity of "cause," and (3) identity of the "thing demanded." La.Civ.Code art. 2286; *Dornak v. Lafayette General Hospital*, [399 So.2d 168 (La.1981)], *supra; R.G. Claitor's Realty v. Juban*, 391 So.2d 394 (La.1980); *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154 (La.1978); *Mitchell v. Bertolla*, 340 So.2d 287 (La.1976).

*Doyle, supra*, at 765. Thus, only if each of the three elements is present in this action may plaintiffs be barred from relitigating the issue of damages.

### *Identity of "cause" and "thing demanded".*

Regarding these elements, it is worth noting that the factual assertions and relief sought in the complaint here are virtually

word-for-word reproductions of the complaint in the state court action. There is no doubt that the "thing demanded" is *identical* in both the case at hand and the state court action, *i.e.*, damages sustained as a result of the pumping unit accident involving William E. Ryals Jr.

There is also no doubt that there is an identity of "cause" in each action.

It has been noted by the Louisiana Supreme Court that "cause of action" is a mistranslation and should read simply "cause". In order to determine the meaning of the word "cause" civilian doctrine should be examined. *Mitchell v. Bertolla*, 340 So.2d 287 (La.1976), rehearing denied 1976.

In his Civil Law Treatise (Traite elementaire de droit civil), Planiol defines cause as "the juridical or material fact which is the basis of the right claimed, or the defense pleaded." 2 Planiol, Civil Law Treatise, pt. I, no. 54A(6) at 38 (11th ed. La.St.L.Inst.transl.1959). In this same source he states, "Without doubt no difficulties are encountered when the claim has as its object a real right or a debt: the cause is the principle giving rise to the right; in the case of a real right it is a purchase, a donation, a legacy, etc.;" ....

*Ditch v. Finkelstein*, 399 So.2d 1216, 1221 (La.App.1981). As already noted, the factual allegations in each case are identical and the "cause" in each action is the same.

*Identity of the parties.*

While plaintiffs do not dispute that there is an identity of "cause" and of "the thing demanded" between the two actions, they strongly assert that the parties are different in each action and that this action is not barred by *res judicata.*

"There is no requirement the parties be actually the same physical parties, but only that they are the same parties in the legal sense of the word." *Ditch v. Finkelstein*, 399 So.2d 1216, 1222 (La.App.1981). "There exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same 'quality' as parties." *Welch, supra,* at 156. In a law review article favorably cited in the *Welch* decision, the concept of identity of parties was discussed as follows:

Res judicata is a relative doctrine in that it only applies to the parties of the prior suit. This identity of parties refers not to physical identity but to identity of "quality". In a suit brought by a tutor or other representative, it is the ward or represented person who is the real party to the suit. In a subsequent suit based on the same cause and having the same object of the demand, the ward would be precluded from relitigating the same questions, but res judicata would not apply to the tutor's suing in his individual capacity. Similarly, when a person is a "successor" to a party in the prior litigation, res judicata properly applies to him because, in legal contemplation, he stands in the shoes of the original party.

John A. Dixon Jr., Robert W. Bookish Jr. and Paul L. Fimmering, *Res Judicata in Louisiana since Hope v. Madison,* 51 Tul. L.Rev. 611, 618 (1977) (hereinafter *"Res Judicata in Louisiana"*).

While no case on the point has been found subsequent to the *Welch* decision, this court does not hesitate to find that, as to Alpha, the quality of the parties is the same in both suits. As the state court record indicates, and as plaintiffs fully recognize in their response to the defendants' motion, Home Indemnity was sued because it stood in Alpha's shoes, and its liability was completely contingent upon a finding that Alpha had been negligent. A different situation would be present if the jury in the state court action had rendered a judgment in excess of the policy limits, but such did not occur. To the extent that the policy limits were not exceeded, there is virtually a complete merger of identities, and a merger far greater than that presented when a tutor represents a minor or when a person is a successor in title because, to recover against Home Indemnity, plaintiffs had to prove that Alpha was liable to plaintiffs.

As to the corporate officers of Alpha, the situation is less clear:

> Difficulties arise in this area with vicarious liability. In *Muntz v. Algiers & Gretna Street Railway Co.*, [40 So. 688], the court held that a judgment in favor of the party primarily liable, a lessee, was res judicata to the same plaintiff's subsequent suit against the person vicariously liable, the lessor; but the court did not discuss the problem of identity of parties. The *Muntz* rationale was criticized in *Williams v. Marionneaux*, [124 So.2d 919], where the court held that an employer and an employee were not the "same parties." It could be argued, however, that a reasonable construction of article 2286 would lead to the conclusion that a person primarily responsible for a debt is the "same party" as one derivatively liable for that debt. Their interests and defenses are often identical, and to consider the two as one should ordinarily produce just results.

*Res Judicata in Louisiana, supra,* at 618–19. The same conflict among Louisiana cases is also discussed in *Cauefield v. Fidelity & Casualty Company of New York*, 378 F.2d 876, 878–79 (5th Cir.1967).

Confusion results because *Williams*, while critical of *Muntz* and its application of *res judicata*, reached the same result by relying on judicial estoppel which was in turn rejected in *Welch*. However, because both *Muntz* and *Williams* involved the situation where the second suit was against the person vicariously liable, the complete reverse of the situation presented in this case, the confusion here evaporates. Alpha, through Home Indemnity, has been found liable and has paid damages. Thus, Alpha's vicarious liability has already been litigated, and damages for that liability have been paid. In terms of vicarious liability, there is an "identity of parties" in this case and in the state court action.

While *res judicata* bars any further action against Alpha and Home Indemnity, it does not bar further proceedings against the corporate officials in their *individual* capacities. It is axiomatic that employees may be primarily responsible as tortfeasors and liable to the victim while the employer is only vicariously liable for its employees' actions. Thus, employees may be liable for damages as well as the employer. In the state court action, Home Indemnity was only sued as Alpha's insurer. Accordingly, Home Indemnity's representation of any individual employee was limited to the issue of whether Alpha was vicariously liable for the actions of an employee and could not represent an employee as to any individual liability that employee might have to the plaintiffs. If the individual employees acted outside the course and scope of their employment, Home Indemnity could not be held liable for their acts, but the *employees* could still be liable to plaintiffs. Therefore, because Home Indemnity did not represent the employees *in their individual capacities* in the state action, there is no "identity of parties" between the two suits as to Home Indemnity or the individual employees sued in state court and the corporate officers sued here. Therefore, *res judicata* cannot bar a suit against the corporate officers and can be an alternative basis for granting the defendants' motion only as to Alpha and Home Indemnity.

## IN PERSONAM JURISDICTION

In the motion for summary judgment, the corporate officers raised the alternative theory that this court lacks *in personam* jurisdiction because they were improperly served. Plaintiffs responded to this argument by noting that officers had made a general appearance, and thus had waived any objections to this court's *in personam* jurisdiction. The court notes that the corporate officers have filed an answer in this case and have joined in the motion for summary judgment. It is further noted that these individual defendants have never responded to the plaintiffs' assertion that they have made a general appearance. It appears to this court that it does have jurisdiction over the individual employees.

## CONCLUSION

For the foregoing reasons, this court concludes that the satisfaction of the state court judgment released all other solidary obligors from liability to the plaintiffs. As to any tortfeasors not solidarily liable, this action is clearly barred by prescription. Alternatively, this action is barred as to Alpha and Home Indemnity by the doctrine of *res judicata* under Article 2286. Accordingly, the motion for summary judgment by the defendants is GRANTED.