306 So.2d 343 (1975)
Joyce BERTRAND, Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY COMPANY et al., Defendants-Appellees.
No. 4844.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1975.
Rehearing Denied February 5, 1975.
Writ Refused April 11, 1975.
*344 J. Clem Drewett and Robert W. Thomas, Drewett, Jacques & Thomas, Lake Charles, for plaintiff-appellant.
Raggio, Farrar, Cappel & Chozen by R. W. Farrar, Jr., Stockwell, St. Dizier, Sievert and Viccellio by Robert W. Clements, Plauché, Smith & Hebert by James R. Nieset, Lake Charles, Shelton & Cline by Larry Richard, Rayne, for defendants-appellees.
Before HOOD, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiff Mrs. Joyce Bertrand appeals the jury verdict dismissing her malpractice claim against the doctor, the hospital, the anesthetist, and the anesthetist's employers. *345 All were involved in a surgical procedure performed on Mrs. Bertrand on September 15, 1970. We affirm.
Plaintiff underwent a hysterectomy performed at defendant Lake Charles Memorial Hospital by her treating physician defendant Dr. Leon Gillard, an obstetrician and gynecologist. The anesthesia was administered under the care of defendant Mrs. Genevieve B. Paulk, an employee of defendant Lake Charles Associated Anesthesiologists. The respective insurers of these defendants were also made parties defendant.
Plaintiff established that she entered surgery in apparent good health at approximately 8 a. m., and at 6:30 p. m. she noticed a loss of feeling and mobility in her left arm. Medical testimony was presented suggesting that she sustained a brachial plexus injury during the course of surgery, and this may have resulted from improper positioning of plaintiff's arms.
Defendants presented medical testimony to the effect that plaintiff's symptoms did not fit the classic pattern of a brachial plexus injury, but were instead compatible with a diagnosis of a small artery occulsion in the brain, a condition to be expected in light of her subsequently discovered chronic cardio-vascular difficulties. Defendants also showed that the positioning of Mrs. Bertrand during surgery, including the positioning of her arms, was in accordance with the standard, accepted, and recognized procedures for positioning and administration of anesthesia during a hysterectomy operation and during many other operating procedures.
The trial jury rejected plaintiff's allegations of malpractice during and after the course of the surgical operation. We fail to find manifest error in the holding that the operation was carried out in a normal, routine, and accepted manner. There is impressive evidence establishing that her left arm problems are more in accord with a cardio-vascular accident (not related to the surgical and follow-up procedures) than with the alleged brachial plexus injury.
Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring Company, 283 So.2d 716 at 724 (La.1973).
Plaintiff alleges and argues six errors: 1) the verdict was not in accordance with the facts, 2) the court failed to give all plaintiff's requested jury instructions, 3) the court erred in instructing the jury that it should apply the "Locality Rule", 4) the court failed to properly charge res ipsa loquitur, 5) the court improperly commented or instructed the jury based upon the evidence concerning the injury and defendant's responsibility therefor, and 6) the court erred in granting judgment based upon the jury decision and in failing to grant plaintiff's motion for a new trial.
Dr. James Oates, a specialist in physical medicine and rehabilitation in Houston, Dr. Harper Willis, neurologist and psychiatrist of Lake Charles, and Dr. Richard W. Levy, a neurological surgeon of New Orleans, testified that plaintiff was suffering from a stretching or compression brachial plexus injury to the left arm. They reasoned that this either might have been or was sustained during surgery. They admitted that many of plaintiff's symptoms did not support a brachial plexus injury, but maintained their opinion based primarily upon the fact that she entered surgery at 8 a. m. with two good arms and *346 at 6:30 p. m. that day she had difficulty with her left arm.
The manner in which plaintiff was positioned on the operating table was testified to by the anesthetist Mrs. Paulk and by the operating surgeon Dr. Gillard. It was confirmed by the surgical nurse and the circulating nurse. This position was confirmed as proper for abdominal surgery by Dr. Gillard, Dr. Sherwood, Dr. Kent, Dr. McCauley, Dr. Miller, Dr. Tucker and Dr. DiGiglia. These physicians have trained and practiced in hospitals in numerous sections of the United States.
The surgeon, the anesthetist, the surgical nurse, and the circulating nurse, each testified that the entire surgical procedure was handled in the normal and routine manner and that nothing unfortuitous or remarkable occured during the procedure.
Dr. Charles Anderson, a specialist in family medicine and surgery in Lake Charles, and Dr. J. W. DiGiglia, a vascular surgeon in Lake Charles, testified concerning a cardio-vascular difficulty which caused plaintiff additional problems in March of 1972. At that time she was seen in the emergency room at St. Patrick's Hospital with complaints of having a spell of dizziness, left facial paralysis and slurring of speech. A transfemoral aortic angiogram was performed and showed significant blockage of those arteries supplying the left arm and the left side of her brain. Surgery was performed to correct that condition.
It was explained that while plaintiff did not suffer a classic "stroke" in either September of 1970 or in March of 1972, it would be reasonable to conclude that a small piece of plaque might have broken loose from a block or a clot and became lodged in a small vessel of the brain. Plaintiff's problems could have resulted from such an accident, and there is no suggestion that defendants would have been liable for this condition.
Dr. Earl Hackett, professor of neurology and psychology at LSU Medical School, testified that plaintiff's condition was related to her upper motor neurons (which would be consistent with a vascular problem) rather than to her lower motor neurons (which would be consistent with a brachial plexus injury). His explanation was persuasive and cast impressive doubt that plaintiff's problem was related to a brachial plexus injury.
The long involved medical testimony left too many doubts to conclude that plaintiff sustained a brachial plexus injury. There was no significant atrophy in her left arm. Her reflexes in her left arm were hyperactive rather than decreased or non-existent. The blood pressure differential in the two arms immediately following surgery was consistent with the vascular problem, but not with a brachial plexus injury.
Plaintiff argues that since the cardiovascular difficulties did not present themselves until 1972, they could not have been a factor in the 1970 injury. However, her arteriosclerotic heart disease was of longstanding when it was discovered. The drop in blood pressure in the left arm immediately following surgery demonstrate that plaintiff had significant cardio-vascular problems at the time of the September 1970 surgery.
Dr. Gillard had recommended to plaintiff that she see a vascular surgeon as of October, 1970, but she did not follow this advice and did not return to Dr. Gillard.
There is ample evidence in the record to permit the jury to find that plaintiff did not suffer a brachial plexus injury. There is likewise evidence to permit the jury to find that if she did suffer a brachial plexus injury, it was not the fault of one or more of the defendants.
Errors number 2, 3, and 4 relate to the failure of the trial judge to give the proper res ipsa loquitur instruction, and to the giving of an instruction concerning the locality rule.
LSA-C.C.P. art. 1793 requires a party to object to the jury charge before *347 the jury retires to consider its verdict, should he intend to assign error to the court's failure to give a proper charge. The trial judge gave a strong res ipsa charge, and plaintiff did not state an objection to that phase of the charge when he stated his objections to the charge.
The doctrine of res ipsa loquitur is utilized when there is no direct evidence and, therefore, it is a rule of circumstantial evidence which should not be confused with substantive law. Thomas v. Chatman, 282 So.2d 783 (La.App. 3 Cir. 1973). There is a body of direct evidence presented in this case explaining the activity leading to the alleged brachial plexus injury. Plaintiff presented one such line of evidence suggesting a brachial plexus injury occurred because the arm was not properly positioned. Defendants presented evidence negating negligence and explaining the cause of plaintiff's difficulty in terms of her own state of health.
The "Locality Rule" provides that the conduct of physicians and nurses is to be judged by the standards employed under similar circumstances by members of their respective professions in good standing in the same community or locality. Plaintiff has not cited Louisiana authority questioning this rule. We do not reach this issue for the reason that there is no suggestion in this record that the standards in Lake Charles differ from standards throughout the United States. On the contrary, there is evidence that the procedures used were identical to those experienced by these physicians in their practice in various places throughout the United States and in accordance with the literature on the subject. The "Locality Rule" was of no significance in the decision of this case.
Plaintiff's fifth specification of error was not supported. Plaintiff has not pointed to an instance where the charge incorrectly stated the law or where legal principles not raised by the evidence were applied to plaintiff's prejudice.
In her sixth specification of error plaintiff has raised an interesting argument. Special interrogatories were presented to the jury such that they were to vote on four questions to determine who was liable. The jury had been properly charged that nine jurors were required to concur before they could reach a verdict. LSA-C.C.P. art. 1795. The vote concerning liability of Dr. Gillard and Drs. Kent, McCauley, Sherwood and/or Lake Charles Associated Anesthesiologists, was nine to three. Jurors Burch, Fontenot, and Franklin voted to hold these defendants responsible. The vote concerning the Hospital's liability was ten to two, with jurors Fontenot and Franklin voting to hold the hospital responsible. The vote concerning the anesthetist Mrs. Paulk was also ten to two, with jurors Burch and Bashire voting to hold her responsible. The court accepted the verdict since nine jurors agreed that each defendant was free from negligence.
Plaintiff argues that only eight jurors were of the opinion that there was no liability in this case. Since it takes nine jurors to agree that there was liability on the part of one of these defendants, there is no suggestion that the jury should have reached the issue concerning quantum.
There was no error in the trial court's conclusion that this verdict met the LSA-C.C.P. art. 1795 requirement that nine of twelve jurors concur. Nine jurors answered no to each of the required questions. No alternative question was posed to the jury for the eventuality that should nine agree that each defendant was free from negligence, then the jury would still have to obtain nine votes holding that all defendants were free from negligence. We reject the contention that the verdict did not meet the requirements of LSA-C.C.P. art. 1795.
There is sufficient evidence to sustain the jury verdict and it is affirmed at plaintiff appellant's cost.
Affirmed.