GUIDRY, Judge.
This is a divorce action. Plaintiff, Juanita McDonnieal Adams, filed the instant suit against defendant, Henry Earl Adams seeking an absolute divorce grounded on the alleged fact that the couple have lived separate and apart for a period in excess of one year. The trial court dismissed plaintiff’s suit concluding that the parties’ separation was not voluntary as required by law since the defendant was insane at the time the parties separated. Plaintiff appeals.
The record reflects that the parties were married on February 29,1948. The defendant, Henry Earl Adams, has a history of mental illness. Mrs. Adams testified that during the last ten years of their marriage, the defendant exhibited irrational behavior characterized by extreme verbal abuse and threats of physical violence directed towards her and other family members. The defendant was hospitalized at Central Louisiana State Hospital in Pineville, Louisiana from May 1974 until June of 1974 for treatment of mental illness. In addition, the defendant was confined to the Springfield, Missouri, Federal Psychiatric Hospital for evaluation purposes in March of 1977 as a result of threatening to injure a United States postal worker. Following his release from that facility, the defendant was placed on federal probation for an eighteen month period in connection with that offense.
Mrs. Adams testified that the defendant kept a machete in their home which he frequently used to physically threaten the plaintiff. Plaintiff stated that she had often contemplated leaving her husband, but was afraid to leave because the defendant threatened to kill her and their son if she did so. In regard to the events which culminated in plaintiff’s departure from the matrimonial domicile, Mrs. Adams stated that on the night of July 21, 1977, the defendant upon returning to the family home became belligerent and verbally abusive towards her. At that time, the Adams’ son, Henry, Jr., was in Shreveport and the defendant demanded that plaintiff order their son to return home immediately. Mrs. Adams stated that she placated the defendant and he eventually went to bed. According to the plaintiff, the defendant arose the next morning and began verbally abusing her, again demanding that their son return from Shreveport. At that point, the defendant obtained the machete and began physically threatening the plaintiff. Thereafter, the defendant began choking the plaintiff. Mrs. Adams stated that she was able to escape from the defendant and fled to the home of her sister-in-law who lives next door. Mr. Adams followed her and attempted to gain entrance to his sister’s *302 home, however, he returned to his house when his efforts proved futile. At approximately 8:30 a.m. that same morning, Mrs. Adams contacted her husband’s federal probation officer, Mr. Timothy Harrison, seeking his advice regarding the best way to handle the violent domestic situation. At that time, plaintiff informed Mr. Harrison of her intent to permanently separate from her husband. Harrison advised Mrs. Adams to remain at her sister-in-law’s house until he had the opportunity to speak with the defendant and evaluate his mental condition. Mr. Harrison testified that plaintiff told him of her desire to retrieve her personal belongings from the house and that he advised her to watch for the defendant’s departure after which she could return to the family home and remove her things. Following defendant’s departure, Mrs. Adams returned to the family dwelling and obtained her clothing. Mr. Harrison further testified that plaintiff made no specific request that the defendant be hospitalized at the time she initially contacted him. Thereafter, Harrison contacted the defendant and subsequently met with him at his office that morning. After speaking with the defendant, Harrison determined that some affirmative action had to be taken to protect the plaintiff and her family from the violent acts of Mr. Adams. Harrison stated that after meeting with the defendant, he contacted the Coroner’s office for information concerning the procedure to follow in obtaining an emergency mental commitment for the defendant. Upon obtaining the requisite information, Harrison contacted Mrs. Adams and recommended that she sign formal commitment papers that morning. On that same day, July 22, 1977, the defendant was taken to Central Louisiana State Hospital. Later that same morning, Mrs. Adams signed the required papers formally committing her husband to the state hospital for evaluation and treatment. Plaintiff and defendant have not lived together since July 22, 1977.
Plaintiff advances two arguments in support of her contention that the decision of the trial court is in error. First, plaintiff contends that the trial court erred in concluding that LSA-R.S. 9:301 mandates that the separation upon which the action for divorce is grounded must be voluntary on the part of one or both of the parties. LSA-R.S. 9:301 provides:
“ When the spouses have been living separate and apart continuously for a period of one year or more, either spouse may sue for and obtain a judgment of absolute divorce.”
Although the language of the statute contains no requirement that the separation be voluntary, it is a well established jurisprudential rule that the separation of the parties must be voluntary at its inception at least as to one of the parties to the separation for a divorce to be granted under authority of LSA-R.S. 9:301. See Otis v. Bahan, 209 La. 1082, 26 So.2d 146 (1946); Sciortino v. Sciortino, 209 So.2d 355 (La.App. 4th Cir. 1968), writ denied, 252 La. 461, 211 So.2d 328 (1968); Miller v. Miller, 378 So.2d 1040 (La.App.2d Cir. 1979). Therefore, we reject plaintiff’s initial contention.
Plaintiff next contends that since the defendant was neither adjudicated insane nor incarcerated at the time she decided to live separate and apart from him that the jurisprudential rule above set forth has no application and the trial court erred in concluding otherwise. We disagree.
In the early case of Galiano v. Monteleone, 178 La. 567, 152 So. 126 (1933) our Supreme Court concluded that there can be no divorce for voluntary separation during the statutory period where either spouse was insane. Through the years, our courts have focused upon the mental condition of the parties at the inception of the separation in order to ascertain whether or not such separation was in fact voluntary. In the later case of Ridell v. Hyver, 215 La. 358, 40 So.2d 785 (1949), the plain tiff-wife separated from the defendant-husband at a time when he was of sound mind. Approximately eleven months later, the defendant-husband was confined to a state mental institution for treatment. The court therein focused upon the mental state of the *303 defendant at the inception of the separation, and finding that the defendant was not insane at that time, concluded that the plaintiff was entitled to an absolute divorce based upon the provisions of LSA-R.S. 9:301. In commenting upon the provisions of LSA-R.S. 9:301, the Court stated:
“As we interpret the statute, the separation intended by it is a separation which is voluntary at its inception and which puts at an end the marital association. It must be the intention of at least one of the parties to live separate and apart, or because one of the parties, with or without the acquiescence of the other, intends to discontinue and sever the marital relationship. In essence, we hold that the separation must be voluntary at its inception and that, if one of the parties becomes insane after such voluntary separation, the insanity does not preclude, prevent, or bar the granting of divorce.”
In his oral reasons for judgment, the trial judge notes that the converse of the court’s pronouncement in Ridell, supra, is that if one party to the action for divorce is insane at the time of the inception of the separation, then the requisite “voluntariness” is not present and a divorce grounded upon the parties living separate and apart for one year or more cannot be granted. We agree.
In the case of Clark v. Clark, 215 La.835, 41 So.2d 734 (1949), the court was confronted with a situation wherein the plaintiff-husband filed for divorce under the provisions of LSA-R.S. 9:301 against his wife who was “adjudged” insane at the time that the parties began living separate and apart. The court concluded that the plaintiff-husband was not entitled to a divorce based upon LSA-R.S. 9:301. Our jurisprudence uses the terms, “insane” and “adjudged insane” interchangeably when referring to that mental state of a spouse which precludes a LSA-R.S. 9:301 divorce. We conclude that it is not necessary that a party to an action under LSA-R.S. 9:301 be formally adjudicated insane by a court of competent jurisdiction before a divorce is precluded thereunder. Rather, it is sufficient that the trial court, charged with deciding the divorce action, determine from the testimony and evidence presented, that one of the parties to the action was, in fact, of unsound mind at the inception of the separation.
The record in the instant case clearly establishes that the defendant was of unsound mind when the plaintiff left the matrimonial domicile. Immediately prior to the plaintiff’s departure from the family home, the defendant exhibited extraordinary behavior characterized by violent physical attacks, extreme paranoia, and uncontrolled emotional outbursts. In addition, the record reflects that defendant’s mental condition resulted in his commitment to a state mental hospital the same day that Mrs. Adams separated from him. After concluding that the defendant was insane at the inception of the separation, the trial court, despite the seeming inequity of the result, had no alternative but to deny plaintiff’s petition for divorce under the provisions of LSA-R.S. 9:301. Discerning no clear error in the factual findings and conclusions of the trial court, such factual findings and conclusions must be affirmed. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975), writ denied, 310 So.2d 641 (La.1975).
For the above and foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Mrs. Juanita McDonnieal Adams.
AFFIRMED.