GUIDRY, Judge.
This is a suit for workmen’s compensation benefits. Plaintiff, Geraldine Richard Ba-bineaux, instituted this suit against defendants, Continental Oil Company (hereafter Conoco), and its workmen’s compensation insurer, Hartford Insurance Company (hereafter Hartford), alleging that she is entitled to workmen’s compensation benefits and medical and chiropractic expenses as a result of a work-related injury sustained while she was employed by Conoco. Plaintiff additionally requested that the trial court award penalties and attorney’s fees, contending that defendant’s failure to pay compensation benefits to her was arbitrary and capricious. After a trial on the merits, the trial court held in favor of the plaintiff and against defendants ordering the latter to pay to plaintiff the sum of $141.00 per week for a period extending from April 20, 1979 to July 14, 1980, and additionally, ordering that defendants pay all outstanding medical and chiropractic expenses incurred as a result of the subject accident. The trial court, however, denied plaintiff's demand for penalties and attorney’s fees. Defendants appeal suspensively from that judgment. Plaintiff did not appeal and did not file an answer to defendants’ appeal.
Prior to trial, the parties stipulated that plaintiff was involved in a work-related accident while employed by Conoco as a utility helper. In addition, the parties stipulated that Conoco was engaged in a hazardous business and that plaintiff was engaged in such hazardous activities at the time of the accident, all within the meaning of the Louisiana Workmen’s Compensation statute.
The record reflects that on April 20, 1979, plaintiff, while engaged in'duties associated with her job, slipped and fell on a wet concrete floor allegedly injuring her back, elbows, and right shoulder. Plaintiff testified that, as she fell, her right shoulder struck a drum located in the area. Leon Banks, a fellow employee, who was with plaintiff at the time of her accident, stated that although there were no drums in the immediate area of plaintiff’s accident, there was a “concrete pier” which her shoulder may have hit. Immediately after the accident, Mrs. Babineaux was examined by Gordon Monroe, a registered nurse employed by Conoco. Monroe indicated at trial that his examination revealed no external manifestations of injury and he concluded that plaintiff could return to work. Contrary to Monroe’s evaluation of her injuries, plaintiff testified that she continued to experience substantial pain as a result of her fall, and thus, was unable to return to work that day. Mrs. Babineaux stated that she went home and related the incident to her mother, who suggested that plaintiff consult with her family physician, Dr. Robert C. Looney. Dr. Looney examined plaintiff and concluded that she had sustained a mild straining-type injury to her back. He advised plaintiff to engage in only light work for a one week period, and additionally, he prescribed a muscle relaxant to ease her discomfort. Dr. Looney did not schedule plaintiff for a follow-up appointment. At the urging of Conoco, plaintiff was examined by Dr. Edmund E. Campbell, an orthopedist, approximately four days after the accident. After a fifteen minute examination, Dr. Campbell concluded that plaintiff had sustained “contusing injuries to the dorsal and lumbar area of the back and both elbows”. Dr. Campbell ordered x-rays which were interpreted by Dr. Elwyn Ca- *1325 vin, a radiologist. Dr. Cavin concluded that plaintiff’s x-rays were normal. Dr. Campbell indicated that plaintiff should recover from her injuries within one week and did not schedule her for a follow-up appointment.
In May of 1979, Mrs. Babineaux became pregnant and delivered her first child on February 10, 1980. The record indicates that Mrs. Babineaux frequently complained of back pain to her obstetrician, Dr. Michael Kudla. In his deposition, Dr. Kudla indicated that a substantial number of pregnant women experience some degree of back pain as a result of their pregnancy. However, Dr. Kudla stated that plaintiff complained somewhat more frequently of such pain than most of his other patients. Since back pain is commonly associated with pregnancy, Dr. Kudla was unable to state whether or not plaintiff’s pain derived from her pregnancy or was a residual effect of her work-related injury.
On or about May 2, 1979, Dr. C. G. Trimm, a chiropractor, began to treat plaintiff for back and shoulder pain. Plaintiff continued to receive such treatment until discharged by Trimm on July 14, 1980. Trimm testified that his examination revealed that plaintiff sustained a straining-type injury to her back. Trimm also stated that plaintiff’s injury was disabling and prevented her from doing her usual tasks throughout the period during which she was being treated.
On October 16, 1979, at Hartford’s request, plaintiff was examined by Dr. Clark Gunderson. Dr. Gunderson’s examination revealed that plaintiff suffered crepitation on range of motion in the right shoulder which he diagnosed as possible tendonitis. Dr. Gunderson did not indicate whether or not plaintiff’s tendonitis resulted from her accident in April of 1979. The record reflects that plaintiff was last seen by medical personnel on November 12, 1980. On that date, Dr. Looney again examined Mrs. Babineaux. At that time, Dr. Looney diagnosed plaintiff’s ailment as acute myositis and opined that her condition had nothing to do with the subject accident.
Plaintiff testified that she experienced substantial pain in her back, elbows, and shoulder subsequent to the accident. She stated that such pain greatly restricted her ability to perform various physical tasks. Plaintiff testified that she returned to work on April 24, 1979. Although assigned to light duty, she continued to experience pain, particularly in her right shoulder. In addition, the medication prescribed to ease plaintiff’s discomfort was sleep-inducing, thus, making it difficult for her to perform her duties. Plaintiff stated that on or about April 27,1979, Conoco terminated her employment. Mrs. Babineaux indicated that she was unemployed from that time until July 21, 1980 when she began working at a Goodyear Tire Store as a clerk/cashier.
Mabel Richard, plaintiff’s mother, and David Babineaux, plaintiff’s husband testified regarding their observations of plaintiff’s ability/inability to perform certain physical tasks. Mrs. Richard stated that prior to the accident, plaintiff could actively engage in all household chores including mopping, sweeping, making beds, etc. However, after the accident, plaintiff was unable to do such activities due to the substantial pain in her back and shoulder. Mr. Babineaux stated that his wife continues to experience pain in her back and shoulder which prevents her from doing many of the usual household chores. Mr. Babineaux testified that his wife cannot engage in any type of heavy work and that he does the majority of such work around the house.
On appeal, defendants contend that the trial court erred in concluding that the plaintiff was disabled for a period longer than one week as a result of the April 20, 1979 accident, considering the uncontradict-ed medical testimony. Alternatively, defendants argue that if plaintiff was disabled for more than one week, her disability ceased as of the end of June, 1979, the date on which she ceased “regular” chiropractic treatment.
*1326 Initially, we observe that the trial court was significantly impressed with the credibility of the lay testimony received at trial. In this regard, the trial judge stated:
“The testimony presents a rather credible case of an injury and disability based on the lay testimony alone. Plaintiff’s testimony was supported by that of her mother and her husband. While all of the lay testimony, including that of plaintiff herself is characterized by the usual selfserv-ing emphasis, imperfect memory, and some inconsistency, the court was fairly impressed by the credibility of the lay testimony and believes that it presents a substantially accurate picture of the plaintiff’s disability ...”
In Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975), our Supreme Court stated:

“Lay testimony has great probative value in establishing certain facts, such as the existence and location of pain and the actual ability or inability of a claimant to perform certain physical functions or to pursue his regular employment. See Larson, supra, at § 79.53. We conclude that lay evidence must be weighed with consideration for the medical fact to be established, of the conclusiveness and validity of the medical evidence and the materiality, relevance and reliability of the particular lay evidence, according to its focus, foundation and its source.”

Further, our court in Boustany v. Fluid Dynamics, Inc., 392 So.2d 750 (La.App. 3rd Cir. 1980) reiterated jurisprudence of longstanding by stating: “It is the task of the trial judge to determine the credibility of the witnesses and this determination will not be disturbed absent manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).”
After hearing extensive medical and lay testimony, the trial judge concluded that “between the dates of April 20, 1979 and July 14, 1980, there is simply not enough adverse medical testimony to overcome the convincing weight of the lay testimony that plaintiff was in fact disabled as a result of the accident”. Our review of the medical testimony received at trial reveals the same to be inconclusive regarding the existence/non-existence and extent of plaintiff’s injuries. Dr. Looney and Dr. Campbell both testified as to their initial impressions regarding plaintiff’s injuries, however, neither physician scheduled follow-up appointments to determine plaintiff’s subsequent condition or whether or not plaintiff suffered any residual effects from her fall. Dr. Kudla, plaintiff’s obstetrician, testified that he could not definitively state whether the source of plaintiff’s back pain was her pregnancy or from the subject accident. Further, Dr. Gunderson in his deposition gives no opinion regarding the cause of plaintiff’s shoulder ailment. Therefore, we conclude that the trial court was not clearly wrong in giving great weight to the lay testimony received at trial and in concluding that plaintiff suffered a disabling injury as a result of her work-related accident on April 20,1979. See Harris v. State through Huey P. Long Memorial Hospital, 378 So.2d 383 (La.1979); Canter v. Koehring Company, supra; Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975).
In the alternative, defendants contend that if the trial court was correct in determining that plaintiff suffered a disabling injury, the trial court erred in concluding that plaintiff was not recovered from such injury by June, 1979, the date defendants allege that plaintiff ceased “regular” chiropractic treatment. The record reflects that plaintiff sought chiropractic care for treatment of her injury on May 2, 1979. She continued to see Dr. Trimm an average of eleven times per month during May and June. After that time, plaintiff began to receive chiropractic treatment less frequently. On June 29, 1979, Dr. Trimm *1327 submitted to plaintiff a so-called “Chiropractor’s Final Report and Bill” which indicated that the results of plaintiff’s treatment had been good. Defendants aver that this report clearly establishes that plaintiff no longer suffered any disability. However, Dr. Trimm testified, and his records clearly reflect, that plaintiff was not discharged from his care until July 14, 1980. The trial court concluded that plaintiff’s recovery from her disabling injury was not completed until the date of her discharge from Dr. Trimm’s care. We discern no clear error in such conclusion. The record indicates that plaintiff’s disability continued to cause her pain until that time. Dr. Trimm, as plaintiff’s chiropractor, saw her on a regular basis and his evaluation regarding her condition, specifically that she had not recovered to the extent that his care was no longer needed until July, 1980, supports the trial court’s findings. See Arceneaux v. Domingue, supra.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of these proceedings are assessed to the defendants, Continental Oil Company and Hartford Insurance Company.
AFFIRMED.