437 So.2d 295 (1983)
William E. WELLS, et ux., Plaintiffs-Appellees-Appellants,
v.
HARTFORD ACCIDENT & INDEMNITY CO., et al.,
Defendants-Appellants-Appellees,
State of Louisiana, Through the Department of Transportation and Development, Defendant-Appellee-Appellant.
No. 83-184.
Court of Appeal of Louisiana, Third Circuit.
August 10, 1983.
Rehearing Denied September 26, 1983.
Writ Denied December 9, 1983.
*296 Gist, Methvin, Hughes & Munsterman, David A. Hughes, Alexandria, for defendants-appellants-appellees.
Fuhrer, Flournoy & Hunter, Leonard Fuhrer, Alexandria, for plaintiffs-appellees-appellants.
John C. Young, Baton Rouge, for defendant-appellee-appellant.
Before GUIDRY, FORET and PICKETT[*], JJ.
GUIDRY, Judge.
This is a joint action by petitioners, William E. Wells and Barbara Wells, seeking recovery of damages they sustained in an automobile collision. Made defendants in this suit are Rapides Parish Police Jury (hereafter the Parish); its liability insurer, Hartford Accident & Indemnity Co. (hereafter Hartford); and the State of Louisiana, through the Department of Transportation and Development (hereafter the State).
Immediately prior to the filing of this suit, Mr. and Mrs. Wells settled their claims and granted a release to Mrs. Givonna Todd, the driver of the other automobile involved in the collision; her husband, Larry G. Todd; and their insurer, Dairy land Insurance Company (hereafter Dairyland). By way of amended answers, the defendants pleaded the above mentioned receipt and release from the Wells to the Todds and their insurer as a bar to plaintiffs' suit. The Parish also filed an exception of res judicata based on the same ground which was overruled. The plaintiffs subsequently filed a motion for summary judgment on the issue of whether defendants could avail themselves of the receipt and release under the circumstances.[1] After trial on the merits, the trial judge found that: (1) the Parish, the State and Givonna Todd were each guilty of negligence which was a proximate cause of the accident; (2) each of the three defendants was at fault to the extent of thirty-three and one-third (331/3%) percent; and, (3) although the defendants and Givonna Todd were solidarily liable to the Wells, the receipt and release granted by the Wells to the Todds did not operate to discharge the defendants from their liability to the Wells. Judgment was rendered in favor of Mrs. Wells and against defendants in solido in the principal amount of two-thirds (2/3) of $136,715.74 or the sum of $91,143.83 and in favor of Mr. Wells and against the defendants in solido in the principal amount of two-thirds (2/3) of $235,827.76 or the sum of $197,231.97. From this judgment, the Parish and its insurer appeal suspensively and the State appeals devolutively presenting the following issues:
(1) Whether the trial judge erred in concluding that the defendants were not released by the plaintiffs' release of the Todds and Dairyland.
(2) Whether the trial judge erred in finding the Parish and/or the State at fault.
The plaintiffs have also appealed presenting additional issues as follows:
(3) Whether the trial judge erred in finding Mrs. Todd at fault.
(4) Whether the trial judge erred in failing to award lost earnings, past and future to Mrs. Wells.
(5) Whether the trial judge erred in failing to award future medical expenses to Mr. Wells.

FACTS
Five miles north of Pineville, Hooper Road, a road maintained by the Rapides Parish Police Jury, forms a T-intersection, from the East, with Louisiana Highway 3225 which was formerly U.S. Highway # 71. This T-intersection is controlled by a "STOP" sign posted on Hooper Road directing traffic on Hooper Road to stop and yield the right of way to traffic on Louisiana Highway # 3225.
On December 18, 1981, at approximately 3:50 p.m., William and Barbara Wells were *297 proceeding in a northerly direction on Louisiana Highway # 3225 approaching its intersection with Hooper Road. At the same time Givonna Todd was proceeding in a westerly direction on Hooper Road approaching its intersection with Louisiana Highway # 3225. As the two vehicles proceeded in this manner, Givonna Todd, upon first seeing the stop sign, instead of braking, elected to run the stop sign. She thus proceeded into the intersection and collided with the Wells' vehicle.
Hooper Road is a winding blacktop road with many curves. It becomes straight a short distance prior to the T-intersection allowing a vehicle to pick up speed. At the time of the accident, only a stop sign warned of this intersection and this sign was defaced and obscured by tree limbs. The trial court concluded from the evidence that the Parish and the State were guilty of negligence in failing to adequately warn of this dangerous intersection. As a result of the accident, both Mr. and Mrs. Wells sustained severe multiple injuries.
By receipt and release executed March 30, 1982, Barbara Wells acknowledged receipt of payment of $10,310.00 and William Wells acknowledged receipt of payment of $15,553.50 by Dairyland Insurance Company and in consideration of those sums granted a release to Larry G. Todd, Givonna Todd and their insurer, Dairyland Insurance Company. The release provides in pertinent part as follows:
"... We do hereby release, acquit and forever discharge Larry G. Todd and Givonna Todd and Dairyland Insurance of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or in any way growing out of, and any and all known and unknown bodily injuries and property damage resulting or to result to either or both of us from an accident that occurred on or about the 18th day of December, 1981, at or near Tioga LA. near Alexandria LA... This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital."

A full copy of the release referred to is annexed to this opinion as Appendix I. This suit was filed on April 12, 1982.
It is the contention of the defendants that the negligence of Givonna Todd was the sole cause of the accident. Alternatively, they contend that if they are found to be joint tortfeasors with Mrs. Todd, since the above release does not expressly reserve the creditors' rights against them, under C.C. Art. 2203, as solidary obligors, they were also discharged by the discharge of Mrs. Todd. We first consider this alternative contention.

EFFECT OF RELEASE ON THE DEFENDANTS
The trial judge found that defendants were co-tortfeasors with Mrs. Todd, but concluded that the release, either on its face or according to the true intentions of the parties did not effect a discharge of anyone other than the Todds and Dairyland. In so concluding, he stated in his written reasons for judgment as follows:
"The Court finds that the release, either on its face or according to the true intention of the parties to it, does not have the effect of releasing anyone other than the parties named therein, the Todds and Dairyland. The release was executed as part of a partial settlement negotiated between plaintiffs' counsel and a representative of Dairyland Insurance Company; the entire consideration for the release was paid by Dairyland; the present defendants played no part in arriving at the partial settlement, paid no consideration toward the partial settlement and did not even know of its existence until it came to light indirectly during the course of this litigation.

Unlike the standard broad, general form of release commonly used in settling automobile liability claims, the release in this case was limited and specified that only the Todds and Dairyland were to be released. This distinguishes it from those cases in the jurisprudence dealing with *298 the type of release containing the `catch-all' language purporting to release all other possibly liable parties.

Moreover, even if the release might possibly appear on its face to have included parties not named, such was clearly not the intent of the parties to the release. In connection with their motion for summary judgment, plaintiffs introduced strong, convincing and unrebutted evidence that it was always their specific intention and the intention of the Todds and Dairyland to do nothing more than settle with the latter and to reserve full rights against all other parties, including defendants herein. Thus, were it to be considered significant for the release to contain a reservation of rights against the defendants herein, the Court has no hesitancy in finding that the failure of the release to contain some sort of reservation of rights was due to a mutual error of fact on the part of both the plaintiffs on the one hand and the Todds and Dairyland on the other.
Therefore, the Court will interpret the release according to its true intent only, which was to reserve all rights against the State of Louisiana, the Rapides Parish Police Jury and the latter's insurer, Hartford Accident and Indemnity Company."
We assume for now the correctness of the trial court's determination that the defendants are joint tortfeasors with Mrs. Todd.
The provisions of LSA-C.C. Art. 2203 apply to debtors ex delicto as well as to debtors ex contractu. Reid v. Lowden, 192 La. 811, 189 So. 286 (1939); Hoffpauir v. Kansas City Southern Railroad Company, et al., 219 So.2d 29 (La.App. 3rd Cir.1969); Clay v. State Farm Mutual Automobile Ins. Co., 330 So.2d 380 (La.App. 3rd Cir.1976). That article provides as follows:
Art. 2203. Remission as to one codebtor in solido
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission."
Without mentioning this article, the trial judge, in finding that the release on its face did not effect a discharge of the defendants, relied on the facts that the defendants were not parties to the release and that the release did not contain "catch-all" language purporting to release all other possibly liable parties. In so finding, the trial judge has ignored the express provisions of LSA-C.C. Art. 2203 and the jurisprudence interpreting it.
In discussing LSA-C.C. Art. 2203, the Supreme Court in the case of Fridge v. Caruthers, 156 La. 746, 752, 101 So. 128, 130, stated:
"This article of our Code is a literal translation of article 1285 of the French Code. The French commentators are unanimous in holding that the article means just what it says: From the fact that the creditor renounces his right as to one (of the solidary debtors) the law concludes that he intends to renounce his right as to all. Each of the solidary obligors is liable for the whole debt as principal debtor to the creditors and is only liable as surety to his codebtors, and that is why the creditor may not discharge one without discharging the others. Planiol `Traite de Droit Civil,' vol. 2, No. 749; Huc `Commentaire du Code Civil,' vol. 8, No. 138; Aubry et Rau `Droit Civil Francais,' vol. 4, p. 205; Laurent `Principes de Droit Civil,' vol. 17, No. 340."
LSA-C.C. Art. 2203 does not require that all co-debtors in solido be parties to a conventional remission or conventional discharge executed in favor of a co-debtor nor does such article require that the conventional remission or discharge contain "catch-all" language releasing all other possibly liable co-debtors in solido. Quite to the contrary, Article 2203, by its express terms, operates to release all co-debtors in solido upon discharge of one unless the creditor has expressly reserved his rights *299 against those co-debtors not parties to the release. In the instant case, the release executed by the plaintiffs in favor of the Todds and their insurer contained no express reservation of the plaintiffs' rights against the Parish and the State. Therefore, assuming that Mrs. Todd and the State and Parish are solidary obligors, the aforesaid release, under the plain terms of Article 2203, operated to release plaintiffs' rights against the State and Parish. Dodge v. Central Louisiana Electric Company, 257 So.2d 802 (La.App. 3rd Cir.1978); Hemphill v. Strain, 371 So.2d 1179 (La.App. 1st Cir. 1979); Written v. Travelers Indemnity Company, 304 So.2d 715 (La.App. 3rd Cir. 1974); Hoffpauir v. Kansas City Southern Railroad, supra. For the above reasons, we conclude that the trial court clearly erred in determining that the release on its face was not sufficient to effect a discharge of the defendants under the provisions of LSA-C.C. Art. 2203.
Plaintiffs and the trial judge also rely on Aymond v. State, Department of Highways, 333 So.2d 380 (La.App. 3rd Cir.1976), for the proposition that one not a party to a release who has paid no consideration for it cannot claim any advantage from it. A careful reading of Aymond reveals that Gerald Aymond, whose insurer had settled with the plaintiff, the widow of his deceased guest passenger, was not, in fact, found to be a joint tortfeasor. Therefore, Article 2203 was inapplicable and the defendant could not otherwise claim any advantage from a contract to which it was not a party. This case is inapplicable unless we should determine that the trial judge erred in his determination that Mrs. Todd is a joint tortfeasor with the defendants.
The trial judge, relying on parol evidence allowed over objection, alternatively concluded that even if the release on its face could be construed as effecting the release of the defendants, the true intention of the parties to the release was otherwise.
In connection with the motion for summary judgment, the plaintiffs attached the affidavits of several individuals including themselves. In sum, these affidavits indicate that it was always their specific intention and the intention of the Todds and Dairyland to do nothing more than settle with the latter and to reserve full rights against all other parties, including defendants. Counsel for the defendants agreed that if those parties were called and allowed to testify their testimony would be the same as that set forth in those affidavits. This, however, was done subject to defendants' objection that the testimony was inadmissible as attempting to vary or contradict the terms of the written contract of release by means of parol evidence. The trial judge relied on the contents of these affidavits for his determination that the instrument of release, properly interpreted according to the intention of the parties, was to reserve all of the Wells' rights against the State and the Parish. We conclude that the trial judge erred in allowing the introduction of this evidence and in concluding, on the basis thereof, that the Wells specifically reserved their rights against the State and the Parish in the instrument of release under consideration.
Our examination of the written release fails to disclose any ambiguity. On the contrary, the instrument is clear and concise and states that it contains the ENTIRE AGREEMENT between the parties and that the terms are contractual and not a mere recital. The instrument being without ambiguity, parole evidence which would vary the terms of this agreement so as to contain a specific reservation of rights against the Parish and the State is clearly inadmissible. As stated in Reid v. Lowden, supra, at page 288:
"The plaintiff contends that the Court of Appeal erred in holding that the reservation must be in writing and incorporated in the release itself and erred in holding that parol evidence was not admissible to prove a sufficient reservation.
The plaintiff entered into a compromise settlement granting one of the joint tortfeasors a discharge, all of which was reduced to writing. There is nothing in the written compromise settlement and release to show that the plaintiff intended *300 to reserve his rights against the other tort-feasor. There is no beginning of proof. There is no ambiguity....
The plaintiff cites Williams et al. v. De Soto Bank & Trust Co., 189 La. 245, 179 So. 303, to the effect that there is nothing sacramental about the form in which the reservation is made.
In the instant case the parties reduced their agreement of settlement and discharge to writing and there is no reservation made therein. The plaintiff is bound by his agreement and cannot alter or change it by parol evidence."
See also LeBlanc v. Pennsylvania Casualty Co., 20 So.2d 32 (La.App. 1st Cir.1944), followed in Guarisco v. Pennsylvania Casualty Co., 20 So.2d 35 (La.App. 1st Cir.1944, reversed on other grounds, 209 La. 435, 24 So.2d 678 (1945), two cases; Alvis Hotel, Inc. v. Alvis Hotel of Monroe, Inc., 149 So.2d 199 (La.App. 2nd Cir.1963); Felder v. Georgia Pacific Corp., 393 So.2d 394 (La. App. 1st Cir.1981), affirmed 405 So.2d 521 (La.1981).
Plaintiffs also rely on the case of Wise v. Prescott, 142 So.2d 613 (La.App. 4th Cir. 1962), where the Fourth Circuit relied on parole evidence. In that case, the insurance adjuster had written in his own handwriting and underscored the word "only" after the names of the parties released. Without deciding whether we agree with our brethren of the Fourth Circuit that this circumstance created sufficient ambiguity to allow the admission of parol evidence, we note that there is no such ambiguity in the present case.
Plaintiffs finally contend, relying on Rougeau v. State Farm Mut. Auto. Ins. Co., 262 So.2d 803 (La.App. 3rd Cir.1972), that they are entitled to have the written agreement reformed to reflect the true intention of the parties as found by the trier of fact. We find the case of Rougeau, supra, to be inapposite.
This is not an action to reform the instrument as in Rougeau, supra, nor could it be, because all parties to the instrument are not made parties to this action. Chicago Mill and Lumber Co. v. Ayer Timber Co., 131 So.2d 635 (La.App. 2nd Cir.1961); Chronos Land Co. v. Crichton, 150 La. 963, 91 So. 408 (1922); Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273 (1906). Therefore this exception to the parol evidence rule is also inapplicable in this case. In sum, we conclude that the trial court clearly erred in admitting and considering parol evidence which had the effect of varying the plain recitals of the instrument of release and thus, failed to properly apply the provisions of LSA-C.C. Art. 2203.
Because, as aforestated, LSA-C.C. Art. 2203 is only applicable where the party released is a joint tortfeasor, Aymond, supra, we will now consider the correctness of the trial judge's determination of Mrs. Todd's liability. The plaintiffs contend that the trial judge erred in his determination that Mrs. Todd was at fault. In his written reasons for judgment, the trial judge made the following findings with regard to Mrs. Todd's liability:
"Ms. Todd testified by deposition that the stop sign on Hooper Road was obstructed from her view and that she did not see it until she was within one hundred feet of the stop sign. She testified that she was unfamiliar with Hooper Road and that it was a narrow curvy S-type road. Ms. Todd further testified that she was travelling between 30 and 35 m.p.h. (P-1). Officer Bobby Potter, the investigating Trooper, testified Ms. Todd told him her speed was 40 m.p.h.
The curvy nature of the road coupled with Ms. Todd's unfamiliarity with the road should have put her on notice to keep a close lookout and maintain control of her car so that she could negotiate turns and stop within a reasonable distance. When Ms. Todd saw the stop sign, instead of braking, she elected to run the stop sign and proceed through the intersection (P-1). Ms. Todd's failure to keep a close lookout and her failure to maintain control of her car was a substantial cause in fact of the accident. Accordingly this Court finds that Ms. Todd was clearly at fault in causing the accident."
*301 The above findings are fully supported by the record and we find no manifest error in this determination. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975).
For the above and foregoing reasons, we conclude that LSA-C.C. Art. 2203 is applicable and that the defendants were released as a result of the instrument of release, copy of which is annexed to this opinion as Appendix I, from any and all liability to the Wells arising as a result of the accident which occurred December 18, 1981.
For the above and foregoing reasons, the judgment of the trial court is reversed. It is hereby ordered that the plaintiffs' claims be dismissed with prejudice. Plaintiffs are cast with costs at the trial level and on appeal.
REVERSED AND RENDERED.

*302 
NOTES
[*] Judge John S. Pickett, Jr., 10th Judicial District Court, Judge Ad Hoc.
[1] Presumably, a decision on this motion was deferred until after trial on the merits.