SEXTON, J. (Ad Hoc),
dissenting.
liThe majority opinion gives bare credence to the compromise entered into in this case between the parties in 1963, and posits the case as basically one of loss of a nonconforming use. I disagree, believing a larger issue is at hand.
While perhaps redundant, a review of the time line herein may be helpful.
• July 1957 — this subdivision, containing the subject property, is zoned commercial by parish ordinance.
• August 1958 — a comprehensive zoning ordinance is adopted by Jefferson Parish zoning the property as residential.
• October 1958 — a building permit is issued by the parish for construction of an office building on the property.
• May 1962 — official objection by letter through the parish attorney objecting to Tolmas’ changes and manner of access to subject property from Veterans Highway.
• May 1962 — petition for injunctive relief filed by Tolmas.
• February 1963 — consent judgment granting permanent injunction rendered.
Obviously, there was significant tension during this period between Mr. Tolmas and the parish over the instant property. Even then, most of the property along Veterans was commercial and the adjacent properties were enjoying access to Veterans Highway. However, by letter the parish attorney advised Mr. Tolmas that his action had destroyed improvements made to the property by the parish and that if he did not repair those he |2would be prosecuted, the property would be restored and he would be sued for reimbursement. I observe that the five days he was given to begin to restore seems a bit short.
The date of that letter is May 11, 1962, and Mr. Tolmas sued on May 16, 1962, within the five days. The hearing on the preliminary injunction, originally set on May 24, was continued to June 18 and then to June 26, at which time it was apparently *660 heard.[3] The parish filed an answer on that date, June 26. In the answer, the parish asserted that the plaintiff was not denied access to Veterans Highway, as plaintiffs property fronted on North La-barre Road and Thomas Drive, both of which intersected Veterans. The parish further pled that plaintiffs property was zoned as residential and his authorized access (not using Veterans) was “more than adequate to serve said property.”
Amidst this contentious background, after the hearing, the trial judge issued a preliminary injunction, essentially as prayed for, on October 18,1962.
Thereafter, almost exactly three months later in an agreement dated January 17, 1963, and identified in the record as PD-1, a letter of compromise was signed by Mr. Tolmas and the president of the Jefferson Parish Council, three councilmen at-large, four district councilmen, the parish attorney, the director of roads and bridges, and the director of the department of safety. Therein these parish authorities and members of the | ¡.parish governing council, on behalf of the parish, and in their individual capacities, all agreed to the permanent injunction as prayed for. They also agreed that there would be no appeal taken from the judgment to be entered as a result of the agreement. Also therein, Mr. Tolmas released any claims against Mr. Dan Hogan, president of the Jefferson Parish Council. Parenthetically I observe that Mr. Tolmas was the major beneficiary of this compromise. All that Mr. Tolmas released in the compromise was to relinquish any claims from “utterances allegedly made by Mr. Hogan immediately prior to the filing of the suit....” Considering the commercial nature of Veterans Highway, then and now, aspects of equal protection seem clearly implicated in the compromise.
On February 7, 1963, “with the consent of all parties hereto, as evidenced by the document identified as PD-1,” the preliminary writ of injunction granted on October 18,1962, “is hereby made permanent.”
Significantly, this permanent injunction was a compromise, to which it appears that every parish authority agreed. Since Morning Park is a legal successor to Mr. Tolmas, it enjoys the benefits of such compromise. Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965), Succession of Cahn, 545 So.2d 1158 (La.App. 4th Cir.1989), citing Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981).
A compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3080. A valid compromise can form basis of plea of res judicata. Boyette v. Riverwood Intern., 27,980, 27,981 (La.App.2d Cir.3/1/96), 669 So.2d 730, on rehearing, 27,980, 27,981 (La.App.2d Cir.5/8/96), 674 So.2d 1102, writ granted in part and remanded, 96-1418 (La.10/4/96), 679 So.2d 1366.
The law of res judicata in effect at the time of the prior judgment in this case, La. R.S. 13:4231,[4] provided as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be *661 between the same parties, and formed by them against each other in the same quality.
In the case sub judice, the object or thing demanded in the first suit and the cause of action for injunction are the same as in the current motion to enforce the permanent injunction judgment; that is, the right of the owner of the property to peaceably possess and use the property as Mr. Tolmas was using it at that time, as offices. This use included, but was not expressly limited to, ingress and egress from Veterans Highway.
Indeed, in her ruling herein, the trial judge noted “it appears what the plaintiffs are requesting is the use of property for offices. It’s very specific in here.”
Having heard expert testimony on the issue, the trial court concluded, “the court is going to enforce the permanent injunction against the parish of Jefferson barring the parish of Jefferson from interfering with the peaceful possession of Morning Park, LLC and its use of the property for offices.”
UThis testimony was by David Halpern, a local attorney and real estate investor, who was accepted as an expert by the parish in the field of real estate development, land use and financial transactions with respect thereto. He reviewed the circumstances of the permanent injunction as compared to the situation in Jefferson Parish at the time and was of the view that Mr. Tolmas was concerned that his property was being treated differently from other properties on Veterans.
I suggest that the majority fails to give credence to the trial court’s determination that this injunction was very specific with respect to an office building. In my view, this ruling is not subject to de novo review which seems to have been the approach of the majority. It must be shown to be clearly wrong, which I contend the majority has failed to accomplish.
I conclude this case is not merely about shells and a simple loss of a nonconforming use in a zoning case, but is a larger matter involving the right of the usage of private property where the parish governing authority, after its complaints about the usage of the property at issue, in the face of judicial attack, consented to a permanent injunction which trumped their zoning ordinance.
As the Supreme Court pointed out in the per curiam granting the writ, reversing the fifth circuit’s earlier ruling herein and transferring the case to this court:
The underlying issue presented in this case is whether property along a major thoroughfare in Metairie, Louisiana, currently zoned residential, may be occupied commercially because of a permanent injunction secured by the current landowner’s ancestor in title preventing |Bthe defendant Parish of Jefferson from enforcing the zoning regulations.
Thus, I conclude that the injunctive compromise is superior to and supersedes the zoning ordinance, and respectfully dissent.

. We say apparently, as it appears from a plaintiff's brief in the record that testimony was taken at that time. (We have not been favored with minutes.) There is no transcript of that hearing, although there is a transcript of a later motion to tax costs.

. Former La. C.C. art. 2286 was redesignated as La. R.S. 13:4231 by Acts 1984, No. 331, § 7, effective January 1, 1985.